## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **THOMAS ROY HARRIS, JR., doing business as SPORTING ARMS COMPANY**<br><br>  **Petitioner,**<br><br>**v.**<br><br>**KRISSY Y. CARLSON, in her official capacity as Director of Industry Operations, Dallas Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives,**<br><br>  **Respondent.** | **Civil Action No. _____** |

### PETITION FOR DE NOVO JUDICIAL REVIEW

1.    Petitioner Thomas Roy Harris, Jr., doing business as Sporting Arms Company, files this Petition for De Novo Judicial Review of the Bureau of Alcohol, Tobacco, Firearms and Explosives' revocation of Petitioner's federal firearms license and denial of his license renewal application.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under 18 U.S.C. § 923(f) and 28 U.S.C. § 1331.

3.    This Court has authority to grant the remedies Petitioner seeks under 18 U.S.C. § 923(f)(3), 18 U.S.C. § 924(d)(2)(B), 28 U.S.C. §§ 2201–02, 2812, and its equitable powers.

4.    Venue is proper in this district and division under 18 U.S.C. § 923(f)(3) because the Sherman Division of the Eastern District of Texas is where Petitioner resides and has his principal place of business.

## PARTIES

5.     Petitioner Thomas Roy Harris, Jr. is a resident and citizen of Lewisville, Denton County, Texas. He has held a federal firearms license to engage in the business as a dealer in firearms since 1994.  (License Number: 5-75-121-01-4F-40453). He does business as Sporting Arms Company, which maintains a principal place of business at Petitioner's residence in Lewisville. He does business both as a retail firearms dealer and as a distributor, or wholesaler, for certain manufacturers.

6.     Respondent Krissy Y. Carlson ("DIO Carlson") is the Director of Industry Operations at the Dallas Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). DIO Carlson is responsible for overseeing Industry Operations Inspectors, attending revocation hearings, and the issuance and revocation of federal firearms licenses for licensees within the jurisdiction of the Dallas Field Division. Petitioner's business operates within the jurisdiction of the Dallas Field Division and DIO Carlson. DIO Carlson is sued in her official capacity.

## STATEMENT OF FACTS

7.     When the ATF is not busy exceeding its statutory authority by promulgating regulations that defy the plain language of congressional enactments,[1] it is revoking the federal

---

[1] *See, e.g.*, *Garland v. Cargill*, 602 U.S. 406, 416 (2024) (holding that the ATF "exceeded its statutory authority by issuing a Rule that classifies bump stocks as machineguns" under the National Firearms Act); *VanDerStok v. Garland*, 86 F.4th 179, 187–88 (5th Cir. 2023) (holding that the ATF exceeded its statutory authority by redefining "firearm" and "frame or receiver" under the Gun Control Act), *cert. granted* (U.S. Apr. 22, 2024) (No. 23-852); *Mock v. Garland*, 75 F.4th 563, 578 (5th Cir. 2023) (holding that the ATF's pistol-brace rule "fails the logical-outgrowth test and violates the APA); *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, --- F. Supp. 3d ----, 2024 WL 3517504, at *22 (N.D. Tex. July 23, 2024) (holding that the ATF exceeded its statutory authority by redefining "machinegun" to include a forced reset trigger); *Texas v. ATF*, No. 2:24-CV-089-Z, 2024 WL 2967340 (N.D. Tex. June 11, 2024) (enjoining the ATF's "engaged in the business" rule), *appeal docketed*, No. 24-10612 (5th Cir. July 9, 2024).

firearms licenses of law-abiding, upstanding dealers like Petitioner. This Petition concerns the ATF's revocation of Petitioner's federal firearms license and denial of his renewal application. The ATF made these decisions based on nothing more than the unreliable and false hearsay statements of two individuals that they made while being investigated for unlawfully selling firearms and while entering guilty pleas for unlawfully selling firearms. The ATF did not make any effort to explain why Petitioner's exculpatory evidence was not credible. And Petitioner had no opportunity to cross-examine the ATF's witnesses to demonstrate the unreliability of their testimony. The ATF's relevant findings and conclusions are not supported by any credible evidence and are factually incorrect. Under *de novo* judicial review, the injustice wrought by the ATF cannot stand.

8.     Petitioner obtained his federal firearms license in 1994 and has operated Sporting Arms Company since that time. The ATF conducted compliance inspections on Petitioner's business in 2000, 2007, 2011, 2014, 2019, and 2022.

9.     Petitioner is 61 years old. Since 2018, Petitioner has not had vision in his right eye, and his vision is otherwise poor. But these challenges have not deterred Petitioner from operating his business in compliance with federal firearms laws. Corey Staub—who had worked for another federal firearms licensee, submitted a declaration in Petitioner's defense, and testified in Petitioner's defense—has explained that Petitioner is "an upstanding individual," "has always done everything by the book," and "is a trustworthy FFL." And Slade Turner—another federal firearms licensee in northern Texas who submitted a declaration in Petitioner's defense—described Petitioner as "one of the strictest dealers [he] ha[s] ever dealt with."

10.     Around September 2021, two individuals named Chris Remley and Lane Koroly began a purported effort to build a firearms business called Elevated Firearms. They began the

process of applying for a federal firearms license and searching for physical space to support their business. They approached Petitioner for help supporting their supposedly lawful effort to start Elevated Firearms.

11.    Around October 2021, Remley and Koroly had obtained business registration documentation for Elevated Firearms. Petitioner knew that their federal firearms license application was in progress, because an ATF agent interviewed Petitioner to verify some of their qualifications. That month, Petitioner agreed to rent unused physical space to Remley and Koroly at this premises, under the condition that they obtain a federal firearms license. By December, Petitioner entered a written rental agreement with Remley and Koroly for the operation of Elevated Firearms.

12.    As relevant to the ATF's revocation proceedings, Petitioner transferred 46 firearms to Remley between October 2021 and January 2022 for purposes of seeding Elevated Firearms with stock, for Remley's personal use, or otherwise with no indication that Remley and/or Koroly intended to sell those firearms without a federal firearms license. During that timeframe, Petitioner and Remley completed 10 ATF Form 4473s concerning the 46 firearms, each of which was signed by Remley, with Remley attesting that he was "the actual transferee/buyer of the firearms(s)."

13.    Petitioner believed that Remley and Koroly were operating in compliance with federal firearms laws, and had no reason to suspect otherwise.

14.    Remley and Koroly, as it turns out, deceived Petitioner. They took advantage of his age and visual impairment, and they sold many of the firearms that Petitioner transferred to Remley before they were issued a license to engage in the business of dealing in firearms. Remley admitted to selling more than 60 firearms for profit between October 2021 and January 2022, including firearms he obtained from Petitioner. Koroly likewise admitted to selling more than 100 firearms

for profit between March 2021 and September 2021, which he said included firearms obtained from Petitioner.

15.     Remley and Koroly conducted most of these sales at gun shows because they knew that Petitioner does not attend gun shows and would not discover their deception and illegal conduct.

16.     As Corey Staub explained in his declaration, Remley would "boast[] and laugh[]" about buying "guns from Sporting Arms to resell them and that [Petitioner] **didn't know he was doing this**." (Emphasis added). And as Slade Turner explained in his declaration, Remley would ask him "not to tell [Petitioner] that he was selling [a] shotgun at the Canton flea market."

17.     Remley and Koroly were indicted for engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 921(a)(1)(A). *See United States v. Chris Remley*, No. 4:23-cv-263 (E.D. Tex.); *United States v. Lane Koroly*, No. 4:23-cv-221 (E.D. Tex.). They both entered guilty pleas, which were accepted by the respective courts.

18.     In the factual basis of Remley's guilty plea, Remley stated: "From October 2021 through January 2022, I willfully engaged in the business of dealing firearms. During that time, I sold approximately 62 firearms for profit. Any firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done with Harris' full knowledge that they would be resold for profit and that I was not the true purchaser/transferee. With Harris' full knowledge and aid, I would falsely state on the 4473 that I was the true purchaser/transferee."

19.     In the factual basis of Koroly's guilty plea, Koroly stated: "From March 2021 through September 2021, I sold approximately 118 firearms for profit. Most firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done so with Harris' full knowledge and aid, I would falsely state on the 4473 that I was the true purchaser/transferee."

20.     Prior to their indictments, Remley and Koroly made similarly unreliable and false assertions concerning Petitioner's knowledge of their scheme and Petitioner's conduct during interviews with ATF agents in October 2022. Remley also participated in a proffer interview with ATF agents in April 2023, where he made additional unreliable and false assertions concerning Petitioner's knowledge and conduct.

21.     On June 22, 2023, the ATF sent to Petitioner a Notice to Revoke or Suspend License and/or Impose a Civil Fine ("Notice to Revoke"). The Notice to Revoke alleged: (1) "On 10 occasions, Licensee willfully aided and abetted a non-licensee in dealing firearms without a license as required by the GCA, in violation of 18 U.S.C. § 922(a)(1)(A)"; and (2) "On 46 occasions, Licensee willfully made a false statement or representation with respect to information required by the GCA, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c)."

22.     Petitioner filed a timely request for a hearing, pursuant to 18 U.S.C. § 923(f)(2).

23.     On February 27, 2024, a hearing was conducted at the ATF's Dallas Field Division. DIO Carlson conducted the hearing. ATF Dallas Division Counsel Kellie Hohenshelt appeared as the attorney for the government. Petitioner attended the hearing with his counsel, David Hardy, and with his consultant, John Clark. In conducting the hearing, the ATF failed to follow its published procedures and the explanation of the hearing process detailed in a pamphlet that ATF provided to Petitioner.

24.     During the hearing, Petitioner introduced documentary and testimonial evidence refuting the ATF's allegations and discrediting the ATF's unreliable evidence.

25.     Petitioner's federal firearms license was set to expire on June 1, 2024. He timely filed a license renewal application, which occurred prior to the ATF making a decision on revocation. This "automatically converted" the proceedings to concern whether to deny

Petitioner's renewal application. *See Bencivenga Corp. v. ATF*, 2024 WL 2261960, at *2 n.1 (S.D. Tex. May 17, 2024).

26.     On June 18, 2024, DIO Carlson issued a Final Notice of Revocation of Firearms License to Petitioner. ("Final Notice," attached as **Exhibit A**). The Final Notice included 15 findings and 4 conclusions. Those findings and conclusions are erroneous and are not supported by credible evidence. The ATF was not authorized to revoke Petitioner's federal firearms license or to deny his application for renewal.

27.     DIO Carlson's findings and conclusions, for all relevant purposes, are dependent on the unreliable and false hearsay statements that Remley and Koroly offered during their guilty-plea proceedings and ATF interviews, *see supra* ¶¶ 17–20, on which DIO Carlson relied to find that Petitioner transferred firearms to Remley knowing that they would be resold. Petitioner had no opportunity to seek discovery from Remley or Koroly. Nor did he have any opportunity to cross-examine Remley or Koroly. In fact, the ATF provided copies of the summaries of Remley's and Koroly's interviews just four days before the administrative hearing.

28.     DIO Carlson cast aside Petitioner's exculpatory documentary and testimony evidence, without ever explaining why Petitioner's evidence and testimony was incredible or implausible. To name a few examples of Petitioner's exculpatory evidence:

        (a)     Petitioner introduced the declaration of Corey Staub, who had worked for another federal firearms licensee, which demonstrated that Remley would "boast[] and laugh[]" about buying "guns from Sporting Arms to resell them and that [Petitioner] **didn't know he was doing this**." (Emphasis added). As Staub's declaration also made clear, Remley bragged that Petitioner "would never find out [Remley] was reselling guns." According to Staub, Remley was "a drug using con-artist, with little concern about the law or people"; by the starkest of contrasts,

Petitioner is "an upstanding individual," "has always done everything by the book," and "is a trustworthy FFL."

(b)     Staub also appeared at the revocation hearing and testified to many of the same facts included in subparagraph (a).

(c)     Petitioner also introduced the declaration of Slade Turner, a federal firearms licensee in northern Texas, who often sells firearms and ammunition at gun shows. Turner explained that Petitioner "has always been one of the strictest dealers [he] ha[s] ever dealt with." Turner also explained that he once encountered Remley selling a shotgun at a flea market, where Remley told Turner that he "had bought several of the shotguns for his stock" and asked Turner "not to tell [Petitioner] that he was selling the shotgun at the Canton flea market."

29.     DIO Carlson concluded that Petitioner: (1) willfully aided-and-abetted Remley and Koroly on 10 occasions in dealing firearms without a license as prohibited by 18 U.S.C. § 922(a)(1)(A); and (2) willfully violated 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c), which prohibit dealers from knowingly making a false statement within ATF Form 4473s, on 46 occasions. Based on those conclusions, DIO Carlson revoked Petitioner's license and denied his renewal application.

30.     Petitioner timely filed this Petition for De Novo Review.

### CLAIMS FOR RELIEF

### COUNT I
### DE NOVO REVIEW
### 18 U.S.C. § 923(f)

31.     Petitioner incorporates paragraphs 1 through 30 as if fully set forth herein.

32.     Section 923(f)(3) provides a right to de novo judicial review of the ATF's decision to revoke Petitioner's license and to deny his application for renewal:

> If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3).

33.     Petitioner seeks de novo judicial review by this Court of all factual and legal issues pertaining to the ATF's revocation of Petitioner's license and denial of his application for renewal.

34.     The findings and conclusions of DIO Carlson in the Final Notice are erroneous and are not supported by credible evidence, especially considering Petitioner's exculpatory evidence that discredits the ATF's unreliable evidence. The ATF did not meet its burden to prove that Petitioner willfully violated any provision of the Gun Control Act.

35.     To justify revoking Petitioner's license or denying his renewal application, the ATF bears the burden to prove that Petitioner "willfully violated" a provision of the Gun Control Act. 18 U.S.C. § 923(d)(1)(C) (denial); *id.* § 923(e) (revocation).

36.     In Violation 1, the ATF alleges that Petitioner "willfully aided and abetted a non-licensee in dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A)." The ATF did not satisfy its burden in the administrative proceedings below, and it cannot satisfy its burden here. For example, the ATF has not proven and cannot prove that Petitioner transferred any firearm to Remley and/or Koroly "with advance knowledge" that they intended to unlawfully sell firearms

without a license. *See Rosemond v. United States*, 572 U.S. 65, 67 (2014); *United States v. Bowens*, 907 F.3d 347, 352 n.6 (5th Cir. 2018). Nor can the ATF satisfy its burdens as to mens rea. *See Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements."); *United States v. Ricard*, 922 F.3d 639, 655 (5th Cir. 2019) (explaining that evidence of "negligence or stupidity" does not prove that the defendant "acted knowingly or willfully").

37.     In Violation 2, the ATF alleges that Petitioner "willfully made a false statement or representation with respect to information required by the GCA, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c)." Each of those provisions forbids a dealer from making a "knowingly" false statement or entry in an ATF Form 4473. The ATF did not satisfy its burden in the administrative proceedings below, and it cannot satisfy its burden here. For example, the ATF has not proven and cannot prove that Petitioner willfully and knowingly made a false statement—*i.e.*, that Remley was the actual purchaser—with sufficient knowledge that the statement was false. *See, e.g.*, *Fairmont Cash Mgmt., L.L.C.*, 858 F.3d at 362; *Ricard*, 922 F.3d at 655.

38.     Petitioner believed that all transfers were lawful and that all statements and/or entries were truthful. Petitioner had no knowledge of, plain indifference to, or deliberate indifference of, the intentions of Remley and/or Koroly to engaged in the unlicensed dealing of firearms. The ATF has not met, and cannot meet, its burden to prove otherwise.

39.     In de novo judicial review under Section 923(f)(3), the ATF bears the burden to prove by **at least** a preponderance of the evidence that Petitioner willfully violated the Gun Control Act. Although the Fifth Circuit has not addressed the ATF's burden of proof, there is support for the notion that the ATF must satisfy its burden with "clear and convincing" evidence. *See, e.g.*,

*CEW Props., Inc. v. U.S. Dep't of Just.*, 949 F.3d 1271, 1278 (10th Cir. 2020) (collecting authorities but ultimately not deciding the question of the government's burden of proof). In this case, the ATF's evidence—almost entirely reliant on unreliable hearsay statements within guilty plea statements and interviews, which is affirmatively rebutted by Petitioner's evidence—cannot satisfy either burden. *See Paducah Shooters Supply, Inc. v. Rogers*, 686 F. Supp. 3d 578, 586 (W.D. Ky. 2023) (issuing preliminary injunction against the ATF where "[t]he ATF point[ed] to no evidence suggesting that [the petitioner's] explanations [were] not credible").

40.    Because this Court's review is "de novo," there is no "presumption of correctness" in the ATF's findings and conclusions. *Fairmont Cash Mgmt.*, 858 F.3d at 361 ("A district court employing a de novo standard of review should not attach any presumption of correctness to the ATF's decision; however, a court may give the ATF's determination as much weight as the court deems appropriate." (quoting *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007)). Because the ATF's findings and conclusions were based solely on unreliable hearsay statements rebutted by Petitioner's evidence, it would be inappropriate to give *any* weight to the administrative proceedings. In this de novo review, "[t]he ultimate decision as to the law and the facts remains with the trial judge." *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980); *Fairmont Cash Mgmt.*, 858 F.3d at 361 n.13 (relying on *Stein's*). Affording Petitioner with true de novo review is entirely consistent with the Supreme Court's recent admonition that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

41.    The Court should permit discovery, permit supplementation of the record, hold a full evidentiary hearing, and require the ATF to prove its case in accordance with the Federal Rules

of Evidence. Although Fifth Circuit precedent permits courts to resolve Section 923(f) appeals based solely on the administrative record in some cases, *Fairmont Cash Mgmt.*, 858 F.3d at 364, that approach is not appropriate here. Courts uniformly permit discovery and hold a full evidentiary hearing whenever there is "some good reason to do so," including whenever there is "substantial doubt" in the ATF's findings, *Stein's*, 649 F.2d at 466, or whenever the Petitioner can show "genuine issues of material fact," *Strong v. United States*, 422 F. Supp. 2d 712, 720 (N.D. Tex. 2006); *Fairmont Cash Mgmt.*, 858 F.3d at 362 n.14 (relying on *Strong*). The lack of credibility of the ATF's evidence, the need to cross-examine the ATF's witnesses, and the genuine issues of material fact concerning Petitioner's conduct and knowledge are irrefutably good reasons to permit discovery and hold an evidentiary hearing. *Townson v. Garland*, 2023 WL 6205450, at *4 (S.D. Ala. Sept. 22, 2023).

42.     Following an evidentiary hearing, the Court should enter an order declaring that the ATF lacked authority to revoke Petitioner's license or to deny his renewal application, and the Court should order the ATF to reinstate Petitioner's license.

## COUNT II
## ATTORNEY'S FEES

43.     Petitioner incorporates paragraphs 1 through 30 as if fully set forth herein.

44.     28 U.S.C. § 2412(d)(1) entitles "a prevailing party" to "fees and other expenses" in "proceedings for judicial review of agency action," "unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust." The ATF's revocation of Petitioner's license and denial of his renewal application were not substantially justified, and the award of fees and costs would not be unjust.

45.     18 U.S.C. § 924(d)(2)(B) entitles a "prevailing party, other than the United States," to recover "a reasonable attorney's fee" where an "action or proceeding under the provisions of

this chapter . . . was without foundation, or was initiated vexatiously, frivolously, or in bad faith."

The ATF's revocation proceedings were initiated without foundation, vexatiously, frivolously, and

in bad faith.

### PRAYER FOR RELIEF

Petitioner respectfully requests that the Court:

(a)     Permit discovery and supplementing of the factual record;

(b)     Conduct an adversarial evidentiary hearing governed by the Federal Rules of
Evidence;

(c)     Hold that the ATF was not authorized to revoke petitioner's license or to deny
Petitioner's renewal application;

(d)     Order the ATF to rescind its Final Notice and to reinstate Petitioner's license;

(e)     Award Petitioner the costs of this action and reasonable attorneys' fees; and

(f)     Award Petitioner such other relief as is just and appropriate.


Dated:  August 15, 2024                   Respectfully submitted,

                                          /s/ Brian M. Gillett
                                          **Brian M. Gillett**
                                          Texas Bar No. 24069785
                                          bgillett@bradley.com
                                          **BRADLEY ARANT BOULT CUMMINGS LLP**
                                          Fountain Place
                                          1445 Ross Avenue, Suite 3600
                                          Dallas, Texas 75202
                                          Telephone: (214) 257-8700
                                          Facsimile: (214) 939-8787

James W. Porter, III
Alabama Bar No. 1704J66P
*Pro Hac Vice Forthcoming*
jporter@bradley.com
William Chadwick Lamar, Jr.
Alabama Bar No. 4176M12Z
*Pro Hac Vice Forthcoming*
clamar@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile:  (205) 521-8800

**COUNSEL FOR PETITIONER**

EXHIBIT A

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License**

In the matter of:

☐ The application for license as a/an _____, filed by:

or

☑ License Number  5-75-121-01-4F-40453 _____ as a/an

Dealer in Firearms Other Than Destructive Devices _____, issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*

Thomas Roy Harris
DBA: Sporting Arms Company
2046 Briarcliff Road
Lewisville, Texas 75067

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed.  Based on the findings set forth in the attached document, your

   ☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

      ☐ 15 calendar days after receipt of this notice, or   ☐ _____ ,

   ☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

   ☐ licensee is fined $ _____ , payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

   ☐ application for license described above is denied, pursuant to 18 U.S.C., 923(d).

   ☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

      ☐ 15 calendar days after receipt of this notice, or   ☐ _____ ,

   ☑ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

      ☑ 15 calendar days after receipt of this notice, or   ☐ _____ ,

   ☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

   ☐ licensee is fined $ _____ , payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business.  If  you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must requeta a stay of  the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at  ATF Dallas Field Division, 2501 Business 121 S, Suite 300A,

Lewisville, TX 75067

prior to the effective date of the action set forth above.  You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor.  See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms.  Any disposition of your firearms busniess inventory must comply with all applicable laws and regulations.  Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

ATF Form 5300. 13
Revised September 2014

| Date<br>06/18/2024 | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official<br>Krissy Y. Carlson, Director, Industry Operations, Dallas Field Division | Signature<br>Krissy Y. Carlson | Digitally signed by Krissy Y. Carlson<br>Date: 2024.06.18 14:47.26 -05'00' |
|---|---|---|---|

I certify that, on the date below, I served the above notice on the person identified below by:

☑ Certified mail to the address shown below.
Tracking Number: 9589071052701519715048          **Or**          ☐ Delivering a copy of the notice to the address shown below.

| Date Notice Served<br>06/18/2024 | Title of Person Serving Notice<br>Executive Assistant | Signature of Person Serving Notice |
|---|---|---|

| Print Name and Title of Person Served<br>Thomas Roy Harris DBA: Sporting Arms Company | Signature of Person Served |
|---|---|

Address Where Notice Served
2046 Briarcliff Road, Lewisville, Texas 75067

Note:  Previous Edition is Obsolete

Thomas Roy Harris
5-75-121-01-4F-40453

ATF Form 5300.13
Page 2

In accordance with 18 U.S.C. §§ 923(e) and 923(f), as well as 27 C.F.R. §§ 478.73 and 478.74, and upon review and consideration of the entirety of the administrative record which is comprised of the statements and exhibits provided by the parties at the hearing of this matter and fully incorporated therein, I hereby make the following findings and conclusions.

**Introduction**

Thomas Roy Harris d/b/a Sporting Arms Company ("Licensee") holds Federal firearms license 5-75-121-01-4F-40453 as a Dealer in Firearms other than Destructive Devices, issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") pursuant to the Gun Control Act of 1968, as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478 (collectively "GCA").

On June 22, 2023, ATF served a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500 (5300.4) ("Notice to Revoke") advising Licensee that ATF intended to revoke his License. Licensee timely requested a hearing to review that Notice.[1]

The hearing occurred on February 27, 2024, at ATF's Dallas Field Division. I, Krissy Carlson, ATF Director, Industry Operations, Dallas Field Division, conducted the hearing. ATF Dallas Division Counsel Kellie Hohenshelt appeared on my behalf as Attorney for the Government. Licensee attended the hearing and was represented by attorney David Hardy, and consultant John Clark. Corey Staub appeared as a witness for Licensee. Court reporter Brenda Reed attended and transcribed the hearing. ATF Deputy Associate Chief Counsel Paul Ware, ATF Acting Area Supervisor Krystle Anderson and Licensee's wife, Judelyn Harris, also attended the hearing as observers. Both ATF and Licensee had the opportunity to present evidence and statements at the hearing. The statements and exhibits introduced at the hearing constitute the record in this proceeding.

**Findings**

Having reviewed the record in this proceeding, I make the following findings:

1. ATF issued the subject Federal firearms license in 1994 for premises located at Licensee's personal residence in Lewisville, Texas. The licensed premises have remained at that location since that time.

2. Licensee has been the sole responsible person for the subject license since his ex-wife was

---

[1] The subject license expired on June 1, 2024, however, Licensee timely filed a Federal Firearms License (FFL) RENEWAL Application, ATF Form 8 (5310.11) Part II, and has been operating under a Letter of Authorization from ATF since that date. This automatically converted this action from a revocation of the Federal firearms license to a denial of the renewal application for the same license. *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1275 fn. 1 (11th Cir. 2005); *Bencivenga Corp. v. BATFE*, Civ. No. 23-CV-3887, 2024 U.S. Dist. LEXIS 89114, *4 fn. 1, 2024 WL 2261960 (S.D. TX. May 17, 2024).

Thomas Roy Harris
5-75-121-01-4F-40453

ATF Form 5300.13
Page 3

removed as a responsible person in 2017.

3. ATF conducted compliance inspections of Licensee in 2000, 2007, 2011, 2014, and 2019.

4. During the hearing, Licensee confirmed his understanding of the relevant laws and regulations under the GCA. Significantly, Licensee demonstrated extensive understanding of the licensing process; the legal requirement to complete all required records when transferring a firearm to a non-licensee; and the obligation to stop unlawful transfers. In light of the evidence presented at the hearing, I conclude that Licensee understood his obligations under the relevant laws and regulations under the GCA.

5. Pursuant to the GCA, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license if the licensee has willfully violated any provision of the GCA or the regulations issued thereunder. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. ATF may similarly deny an application for a Federal firearms license if the applicant willfully violated the GCA. 18 U.S.C. § 923(d)(1)(C); 27 C.F.R. §§ 478.47(b)(3); 478.71.

6. For purposes of the regulatory provisions of the GCA, a "willful" violation is committed when the licensee knows of his legal obligations and purposefully disregarded or was plainly indifferent to those requirements. *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356 (5th Cir. 2017). *See also Bryan v. United States*, 524 U.S. 184, 197-98 (1998).

7. Violation 1 of the Notice to Revoke alleges that on 10 occasions, Licensee willfully aided and abetted a non-licensee in dealing firearms without a license as required by the GCA, in violation of 18 U.S.C. § 922(a)(1)(A).

8. Violation 2 of the Notice to Revoke alleges that on 46 occasions, Licensee willfully made a false statement or representation with respect to information required by the GCA, in violation of 18 U.S.C. § 922(m) and 27 C.F.R. §478.128(c).

9. ATF, through the documents presented by Division Counsel Hohenshelt, demonstrated that Chris REMLEY ("REMLEY") and Lane KOROLY ("KOROLY") each entered a guilty plea to one count of engaging in the business of dealing in firearms without a license, 18 U.S.C. § 922(a)(1)(A), in *United States v. Chris Remley*, (4:23-CR-263) and *United States v. Lane Koroly*, (4:23-CR-221) both in the United States District Court for the Eastern District of Texas, Sherman Division. The pleas were accepted by the court.

10. KOROLY's Factual Basis, dated September 25, 2023, states in part that, "From March 2021 through September 2021, I sold approximately 118 firearms for profit. Most firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done so with Harris' full knowledge and aid, I would falsely state on the 4473 that I was the true purchaser/transferee." (Gov. Ex. 2).

11. REMLEY's Factual Bais, dated November 3, 2023, states in part that, "From October 2021 through January 2022, I willfully engaged in the business of dealing firearms. During that

Thomas Roy Harris
5-75-121-01-4F-40453

ATF Form 5300.13
Page 4

time, I sold approximately 62 firearms for profit. Any firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done so with Harris' full knowledge that they would be resold for profit and that I was not the true purchaser/transferee. With Harris' full knowledge and aid, I would falsely state on the 4473 that I was the true purchaser/transferee." (Gov. Ex. 2).

12. Introduced at the hearing were Reports of Investigations (ROI) (Gov. Exs. 3, 4 and 5) detailing the underlying scheme for the unlawful sales. During 10 separate occasions, REMLEY completed Firearms Transaction Records, ATF Form 4473, without Licensee entering the required firearm information on the Forms. On those occasions, Licensee transferred multiple firearms to REMLEY. REMLEY/KOROLY would then unlawfully engage in the business of dealing in firearms without a license at gun shows and would return the unsold firearms to Licensee. Licensee would then list the firearms that REMLEY/KOROLY sold at the gun shows to the previously executed ATF Forms 4473 indicating that REMLEY was the actual transferee of those firearms. At the hearing, 46 firearms identified by REMLEY were discussed. Such activity bypassed the required National Instant Criminal Background Check (NICS) on the actual purchaser and made future traceability of the firearm to the actual purchaser unlikely.

13. At the hearing, Licensee purported to outline his involvement with REMLEY and KOROLY in the fall of 2021. Licensee asserted that the two men were starting a firearms business, Elevate Firearms, and working to obtain their Federal Firearms License. Licensee claimed the intention was for him to provide physical space within his personal residence/licensed business premises for REMLEY and KOROLY's operations. Licensee knew details about the application and business plan of REMLEY and KOROLY. Licensee observed mail arriving at his business location for Elevate Firearms to include Employer Identification Number (EIN) and Texas Sales Tax Use Form (Transcript pg 84, line 20). Licensee asserted the firearms he transferred to REMLEY were "seed" inventory for REMLEY and KOROLY'S business venture. (Transcript pg 138). Licensee stated he knew that REMLEY and KOROLY submitted an application for Federal Firearms License to ATF. As stated at the Hearing by Division Counsel Hohenshelt, the Federal Firearms License was not issued to REMLEY AND KOROLY. Licensee knew great details about each of the 10 transactions and continued to state REMLEY did not state at the time of transfer the firearms were for immediate resale to third parties. Licensee introduced several exhibits outlining and explaining his position on the 10 transactions to include Licensee bank statements and spreadsheets created by Licensee addressing each of the 46 firearms. (FFL Exs. 3, 16, and 17)

14. Licensee obtained his first License in 1994. Since that time, he has had numerous interactions with ATF. During the hearing, Licensee established his extensive knowledge of the GCA and the regulations associated, to include very nuanced portions of the firearm law. Additionally, Licensee volunteered knowledge of practical aspects of conducting a business including the necessity to possess a firearms license before engaging in the business of dealing in firearms.

Thomas Roy Harris
5-75-121-01-4F-40453

ATF Form 5300.13
Page 5

15. I find Licensee's statements and documents presented in attempting to explain his interactions with REMLEY and KOROLY lack credibility. Licensee appeared to be incredibly knowledgeable on some specifics yet could not recall simple facts in other instances. Licensee provided a detailed account of acquiring his own Federal Firearms License in 1994, to include acquiring a financial backer and waiting until after the Federal Firearms License was issued to begin purchasing firearms. Licensee's extensive knowledge of the firearms business demonstrated through his own statements accentuates his implausible assertion that REMLEY and KOROLY took advantage of an elderly, disabled individual.

## CONCLUSIONS

I conclude that:

1. Licensee had knowledge of his legal obligations;
2. Licensee failed to comply with his legal obligations under the GCA as set forth in Violations 1 and 2;
3. Licensee acted with plain indifference and/or purposeful disregard as to Violations 1 and 2; and,
4. Licensee, THOMAS ROY HARRIS, willfully violated the GCA and therefore the Letter of Authorization to continue operating under Federal firearms license 5-75-121-01-4F-40453 is REVOKED pursuant to 18 U.S.C. § 923(e) and 27 C.F.R. § 478.74. This also serves to DENY the renewal application submitted for the same license.

Dated this 18th day of June, 2024.

*Krissy Carlson*
_____
KRISSY Y. CARLSON
Director, Industry Operations
Dallas Field Division
Bureau of Alcohol, Tobacco, Firearms and Explosives
United States Department of Justice



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Washington DC*
www.atf.gov

# IMPORTANT NOTICE

## Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL

Former Federal Firearms licensees (FFLs) who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in the business" of selling firearms without a license in violation of 18 U.S.C. § 922(a)(l)(A). Accordingly, former licensees who wish to dispose of any remaining business inventory must adhere to the following guidance:

Business inventory must be disposed of by the former FFL in a manner that, objectively, does not constitute being engaged in the business of dealing in firearms using the same facts and circumstances test that would apply to persons who have never been licensed.

The preferred manner of disposition is for the former licensee to:

- Arrange for another FFL to purchase the business inventory (and other assets) of the business; or
- Consign the inventory to another FFL to sell on consignment, or at auction.

Should a former FFL decide against those options, he/she should be aware that future sales - whether from his/her personal firearms collection or otherwise - will be evaluated for a potential violation of 18 U.S.C. § 922(a)(l)(A), just as would occur with a person who had never been licensed.

If a former FFL is disposing of business inventory, the fact that no purchases are made after the date of license revocation, expiration, or surrender does not immunize him/her from potential violations of 18 U.S.C. § 922(a)(l)(A). Instead, business inventory acquired through repetitive purchases while licensed are attributed to the former FFL when evaluating whether subsequent sales constitute engaging in the business of dealing in firearms without a license.

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

CURTIS
GILBERT
Digitally signed by
CURTIS GILBERT
Date: 2022.04.04
16:12:22 -04'00'

Curtis Gilbert
Deputy Assistant Director (Industry Operations)
Field Operations