## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| THOMAS ROY HARRIS, JR., doing business as Sporting Arms Company<br><br>Petitioner,<br><br>vs.<br><br>KRISSY Y. CARLSON, in her official capacity as Director of Industry Operations, Dallas Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives,<br><br>Respondent. | No. 4:24-cv-00737-SDJ |

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Respondent Krissy Carlson, Director of Industry Operations ("DIO"), Dallas Field Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), through the undersigned, respectfully moves this Court for summary judgment and for an order finding that Respondent was authorized to revoke the Federal Firearms License ("FFL") of Petitioner Thomas Roy Harris, Jr. d/b/a Sporting Arms Company. The United States contends that the Certified Administrative Record ("CAR") contains all material facts necessary for the Court's *de novo* review of this matter making appropriate a Rule 56 judgment as a matter of law. Fed. R. Civ. P. 56.

In support, the United States submits as follows:

## INTRODUCTION

Petitioner seeks *de novo* review of a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License issued by ATF on June 18, 2024, revoking his FFL.

*See generally* ECF No. 1, Compl. After an administrative hearing, Respondent revoked Petitioner's FFL, finding that Petitioner willfully violated the Gun Control Act of 1968, as amended, 18 U.S.C. Chapter 44 and its implementing regulations found at 27 C.F.R. Part 478 (collectively, "GCA"). Petitioner is authorized to bring this action against the United States "for a de novo judicial review of such . . . revocation." 18 U.S.C. § 923(f)(3).

The narrow issue before this Court is whether Respondent was authorized to revoke Petitioner's FFL. *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356, 361 (5th Cir. 2017); *Crusader Gun Grp., LLC v. James*, 118 F.4th 648, 651 (5th Cir. 2024); *see also Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980) ("Consideration of judicial economy suggests that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact."). There is no need for the parties to engage in discovery for this Court to conduct its *de novo* review. The CAR contains all evidence necessary for this Court to determine that Respondent was authorized to revoke Petitioner's FFL based on his willful violations of the GCA. Accordingly, the United States brings this Rule 56 motion for summary judgment.

## I.    FACTUAL BACKGROUND AND STATEMENT OF RELEVANT ADMINISTRATIVE ENFORCEMENT HISTORY.

Petitioner has continuously held a type 01 FFL as a Dealer in Firearms other than Destructive Devices since 1994. *See* Certified Administrative Record ("CAR") at 564–65. ATF issued the subject license after conducting a qualification inspection in which it reviewed the relevant firearms laws and regulations with Petitioner. Following the removal of his ex-wife as a

responsible person on the license in 2017, Petitioner has been the sole responsible person on the license.[1]  CAR at 564.

Since the issuance of the license, ATF conducted compliance inspections of Petitioner in 2000, 2007, 2011, 2014, and 2019. CAR at 565.[2] The 2007 and 2019 compliance inspections resulted in ATF issuing Petitioner warning letters after finding violations and proposing corrective action. (CAR at 2.) Both warning letters emphasized that, "any future violations, either repeat or otherwise, could be reviewed as willful and may result in revocation of [his] license." *Id*.

In early 2021, Petitioner was introduced to Chris Remley and Lane Koroly at a gun show. CAR at 18–19. Later that year, Petitioner began selling firearms to Remley and Koroly. *Id.* When purchasing firearms, Remley and Koroly would, with Petitioner's full knowledge and aid, falsely state on Firearms Transaction Records, ATF Forms 4473,[3] that they were the true purchaser/transferee of the firearms when in fact they were not, and the firearms were actually purchased by Remley and Koroly for resale. CAR at 14, 16.

From October 2021 through January 2022, Remley willfully engaged in the business of dealing firearms and sold approximately 62 firearms for profit, including those purchased from

---

[1] A "responsible person" includes any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of a business, insofar as they pertain to firearms.  *Gilbert v. United States BATFE*, 805 F. App'x 198, 200 n.2. (4th Cir. 2020); 27 C.F.R. § 478.11.

[2] "Ex." refers to the exhibits filed simultaneously with this motion and will be followed by the exhibit number and page number. "Pet. Ex." refers to the exhibits Petitioner submitted with its motion and will be followed by the relevant page number. "CR" refers to the clerk's record in this court and will be followed by the docket number.

[3] A Firearms Transaction Record, or ATF Form 4473, is a form that must be completed for the sale, transfer or other disposition of a firearm between a federal firearms licensee and a non-licensee. See 27 C.F.R. § 478.124(a).

Petitioner. CAR at 14. From March 2021 through September 2021, Koroly also engaged in the business of dealing in firearms and sold approximately 118 firearms for profit, including those purchased from Petitioner. CAR at 16.[4] Neither Remley nor Koroly have ever been licensed to deal firearms within the meaning of the GCA. CAR at 14, 16.

Remley and Koroly were convicted in this Court for engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 921(a)(1)(A) after pleading guilty, on December 18, 2023, and September 27, 2023, respectively. *See United States v. Remley*, No. 4:23-cr-263 (E.D. Tex.); *United States v. Koroly*, No. 4:23-cr-221 (E.D. Tex.). In doing so, Remley and Koroly each submitted a factual basis to this Court acknowledging that the firearms purchased from Petitioner "were done so with [Petitioner's] full knowledge that they would be resold for profit and that I was not the true purchaser/transferee." CAR at 14, 16.

On June 22, 2023, ATF served Petitioner a Notice to Revoke or Suspend License and/or Impose a Civil Fine under 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73. CAR at 1–6. Petitioner timely requested a hearing pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74. CAR at 7. On February 27, 2024, ATF held an administrative hearing on its notice to revoke. Respondent served as the hearing officer. CAR at 566. At the hearing, Petitioner had the opportunity to submit facts and arguments for Petitioner's review and consideration.

On June 18, 2024, ATF served on Petitioner a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of Firearms License ("Final Notice").[5] CAR at 562–70. The

---

[4] According to Koroly's statement to ATF, Koroly would send "a girl and a guy whom he did not know," as well as an individual by the name of Samuel Calderson, to Petitioner to purchase the firearms Koroly later sold at gun shows. ((Ex. GX3, Page 000019).

[5] Petitioner's license expired on June 1, 2024; however, Petitioner timely filed a Federal Firearms License (FFL) RENEWAL Application, ATF Form 8 (5310.11) Part II, and was operating under a

Final Notice explained that ATF determined that Petitioner willfully violated 18 U.S.C. § 922(a)(1)(A) on ten occasions by aiding and abetting a non-licensee in dealing firearms without a license as required by the GCA, and willfully violated 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c) on forty-six occasions by making a false statement or representation with respect to information required by the GCA. CAR at 565. Respondent found that Petitioner understood his obligations under the relevant laws and regulations under the GCA and demonstrated a "knowledge of practical aspects of conducting a business," to include "the necessity to possess a firearms license before engaging in the business of dealing in firearms." CAR at 566. Respondent further found that both Remley and Koroly were convicted of one count of engaging in the business of dealing in firearms without a license, 18 U.S.C. § 922(a)(1)(A), in this Court and, as part of the plea, informed the court they had acquired firearms from Petitioner with Petitioner's full knowledge they were falsifying the ATF Forms 4473 when representing themselves as the true buyers of the firearms. CAR at 565–66. Therefore, based on all the facts and arguments presented at the administrative hearing, Respondent found that Petitioner's actions were willful in that he was aware of the definition of true buyer, as well as his responsibility to ensure truthful information is contained on the ATF Form 4473 and instead acted with plain indifference and/or purposeful disregard to that responsibility for each of the violations cited in the Notice to Revoke.

In reaching her finding, Respondent stated she found Petitioner's attempts to explain his interactions with Remley and Koroly lacked credibility. CAR at 567. Petitioner claimed he transferred the firearms to Remley and Koroly as "seed inventory" for Remley's and Koroly's firearms business venture ahead of them receiving an FFL. However, Petitioner relayed that when

---

Letter of Authorization from ATF from that date until June 18, 2024. As a result, the Final Notice served as a revocation of Petitioner's license and a denial of his renewal application.

he started his firearms business in 1994, he had to wait until after the FFL was issued before acquiring inventory for his new firearms business. CAR at 566.  In addition, Petitioner offered witnesses who described Petitioner as having extensive knowledge of federal firearms laws and regulations and as having a reputation of being an expert in the field. Accordingly, Respondent found Petitioner's claim that Remley and Koroly had taken advantage of him incredible and that the facts revealed Petitioner's desire for profit led to him to act with plain indifference and/or purposeful disregard to the GCA. CAR at 567.

On August 15, 2024, Petitioner filed in this court a Petition for De Novo Judicial Review of the Final Notice of Revocation. ECF No. 1. Petitioner requested this Court, among others: 1) permit discovery and a supplementing of the factual record; 2) conduct an adversarial evidentiary hearing; 3) find ATF was not authorized to revoke Petitioner's license (or deny Petitioner's renewal application); and 4) order ATF to rescind its Final Notice and reinstate Petitioner's license. ECF. No. 1, at 13.

## STANDARD OF REVIEW

ATF has authority,[6] after notice and opportunity for hearing, to revoke an FFL if the licensee has willfully violated any provision of the GCA or the regulations promulgated thereunder. *Fairmont Cash Mgmt.*, 858 F.3d at 361; *see also* 18 U.S.C. § 923(e). An aggrieved party seeking to reverse the revocation may file a petition with the district court for *de novo* judicial review. *Id*. On review, the district court will decide whether ATF was authorized to revoke the FFL, or in other words, whether the record is sufficient to show the aggrieved party "willfully violated" the GCA. *Id*. (citing 18 U.S.C. § 923(f)(3)).

---

[6] This authority has been delegated to ATF by the Attorney General. 28 C.F.R. § 0.130.

When reviewing a petition filed under the GCA, "a court may give the ATF's determination as much weight as the court deems appropriate." *Id*. (quoting *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 758 (S.D. Tex. 2007)). "Although review must be *de novo*, the court is 'not required to hold an evidentiary hearing and may enter judgment solely based upon the administrative record.'" *Id*. (quoting *Arwady*, 507 F. Supp. 2d at 758); *see also Strong v. United States*, 422 F. Supp. 2d 712, 720 (N.D. Tex. 2006); *Stein's, Inc. v. Blumenthal*, 629 at 466–67 (holding that a court's *de novo* review of a denial of a firearms license "may be confined to the administrative record or may be supplemented by the admission of additional evidence" and that "trial anew of factual matters already litigated should be avoided unless substantial doubt infects the [government's] findings of fact").

"Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). The moving party has the burden of showing that there is no genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those that support an essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). However, not all facts are material. Whether a fact is material depends upon the substantive law underlying a particular claim, while "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in original). Otherwise stated, "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment;" that is precluded only if there is a genuine issue of material fact. *St. Amant v. Benoit*, 806 F.2d 1294, 1296 (5th Cir. 1987). Indeed,

"[m]ere conclusory allegations are insufficient to defeat summary judgment." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).

While the United States brings this motion under Rule 56, this is not a typical civil case but, rather, it is a *de novo* review of whether ATF had the authority to revoke Petitioner's FFL under 18 U.S.C. § 923(f)(3). As the Fifth Circuit explained, "In reviewing the ATF's decision, the question is whether it was authorized to revoke the petitioner's FFL." *Fairmont Cash Mgmt.*, 858 F.3d at 362 (citing *Arwady*, 507 F. Supp. 2d at 761); *see also Suydam v. ATF*, 847 F. Supp. 2d 146, 156 (D. Me. 2012) ("In general, although the law provides for a *de novo* review, the statute makes it clear that the focus of that review is narrow: whether the Attorney General was 'authorized' to revoke the license.").

Here, the Court must determine whether ATF was authorized to revoke Petitioner's FFL. Stated another way, "[t]he language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in its own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license." *Pinion Enters., Inc. v. ATF*, 371 F. Supp. 2d 1311, 1314–15 (N.D. Ala. 2005).

To make this determination, the Court must evaluate whether Petitioner willfully violated any provision of the GCA or related regulations. The Fifth Circuit has held that for a violation to be 'willful' it must have been committed with deliberate disregard of or plain indifference to a known legal obligation. *See Fairmont Cash Mgmt.*, 858 F.3d at 362. "A violation is considered willful if the license holder 'understands the requirements of the law, but knowingly fails to follow them or was indifferent to them.'" *Vaughn v. Dep't of Just. Bureau of Alcohol, Tobacco, & Firearms*, No. 1:04-MC3-D, 2005 WL 5895593, at *2 (N.D. Miss. Apr. 12, 2005) (quoting *3*

*Bridges*, 216 F.Supp.2d at 567 (citing *Perri v. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 637 F.2d 1332, 1336 (9th Cir. 1981)). "If the Court finds there is substantial evidence of willfulness, the Court may uphold the ATF's denial [or revocation] of [Petitioner's] license." *Arwady Hand Truck Sales, Inc. v. Vander Werf*, 507 F.Supp.2d 754, 761 (S.D. Tex. 2007).

## <u>ARGUMENT</u>

The CAR contains substantial evidence Petitioner willfully violated the GCA by aiding and abetting Remley and Koroly to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 921(a)(1)(A). "The federal aiding-and-abetting statute extends principal criminal liability to anyone who 'aids, abets, counsels, commands, induces or procures' the commission of a federal offense." *United States v. De Nieto*, 922 F.3d 669, 677 (5th Cir. 2019) (citing 18 U.S.C. § 2(a)). Indeed, the statute's purview is broad, "comprehend[ing] all assistance rendered by words, acts, encouragement, support, or presence . . . even if that aid relates to only one (or some) of a crime's phases or elements." *Id*. at 677–78.

Here, Petitioner sold numerous firearms to Remley and Koroly on multiple occasions. CAR at 565–66. On occasion, Petitioner would have Remley fill out the ATF Form 4473, except for the firearm information, and then complete the form after the fact, to include the firearm information, based on which firearms Remley informed Petitioner he was able to sell at gun shows as "private sales." CAR at 21, 566. In addition, Petitioner knew that Remley and Koroly were not yet licensed to deal firearms. CAR at 14, 16. Yet, Petitioner continued to sell firearms to Remley and Koroly, who both confessed that the firearms they purchased from Petitioner were done so "with [Petitioner's] full knowledge that they would be resold for profit," and that they were not the true purchaser/transferee of the firearms. *Id.*   Finally, both Remley and Koroly admitted to falsely

stating on ATF Forms 4473 that they were the true purchaser/transferee of the firearm "[w]ith [Petitioner's] full knowledge and aid." *Id.*

Regardless of whether Petitioner shared Remley's and Koroly's criminal intent beyond a reasonable doubt, the evidence clearly establishes that the Petitioner willfully violated the GCA and its regulations by demonstrating plain indifference if not purposeful disregard toward the requirements of the GCA. *See Fairmont Cash Mgmt.*, 858 F.3d at 362 ("A single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe, though the frequency and severity of the violations can be relevant to willfulness."). Accordingly, Respondent was justified in finding Petitioner willfully violated the GCA based on the evidence contained in the CAR and was authorized to revoke Petitioner's license.

Petitioner asserts that "DIO Carlson's findings and conclusions, for all relevant purposes, are dependent on the unreliable and false hearsay statements that Remley and Koroly offered during their guilty plea proceedings and ATF interviews." (ECF. No. 1, ¶ 27. However, other than denying the claim, Petitioner provided no evidence that Remley's and Koroly's statements were unreliable and his argument that the statements are hearsay does nothing to advance his position because the Federal Rules of Evidence do not apply to administrative proceedings. *See* Fed. R. Evid. 1101(a) & (b); *see also Nationwide Jewelry & Pawn, Inc. v. United States*, 455 F. Supp. 2d 1379, 1383 (M.D. Ga. 2006). More importantly, Petitioner fails to acknowledge the substantial evidence contained within the CAR and considered by Respondent that supports Remley's and Koroly's statements as being reliable and true.

First, Remley's and Koroly's statements implicating Petitioner in the conspiracy to engage in the business without a license were first made as part of each of their individual proffer sessions with ATF. CAR at 18–27. Neither Remley nor Koroly had any incentive to lie to ATF about

Petitioner's involvement in the conspiracy nor did either of them receive any favorable treatment from ATF by doing so.

Second, both Remley and Koroly further implicated Petitioner when making subsequent sworn statements to this Court, which in turn accepted those statements as part of their guilty pleas. CAR at 14, 16, 565. These subsequent statements were consistent with those Remley and Koroly gave to ATF during their proffer sessions and were made without any promise for a reduction to their sentences or for any other type of benefit from the district court.

Third, there are numerous ATF Forms 4473 that corroborate Remley's and Koroly's statement that Petitioner was fully aware the firearms were being purchased for the purpose of reselling them for profit. CAR at 565. These ATF Forms 4473 not only confirm Petitioner sold Remley multiple firearms but were also used by Remley to identify the firearms he "sold at a gun show/flea market as part of the conspiracy to move firearms out of [Petitioner's] inventory," as opposed to those he purchased for his personal use. CAR at 24–126. Petitioner did not refute these transactions, nor can he explain why Remley, if he were lying about Petitioner's involvement, felt the need to distinguish between the firearms he sold for profit and those he kept for his personal use.

Finally, Petitioner's representations regarding his inventory during the timeframe in question corroborate Remley's statements that Petitioner "needed the firearms inventory moved." CAR at 21. While Petitioner denied the need for "inventory reduction" and claimed not having any problems moving his inventory in 2021, he also admitted that his inventory was significantly greater in 2021 than his average annual inventory. (Pg. 26 Transcript). When asked about this increased inventory, Petitioner conceded:

> And just—I've tried to reduce it. *Doesn't really return a good investment to stock a lot of inventory if prices are very volatile*. So, there were supply-chain issues. There

were a lot of quality issues in firearms that were produced during COVID. Smith & Wessons were recalled. They have a recall right now, so industry has struggled to come down—back to where they were to the point of high quality.

CAR at 336–32 (emphasis added). Petitioner continued:

It just doesn't pay to stock a lot right now. *It was huge flood of Turkish-made shotguns, and rifle shotguns, I believe. And that really kind of started rolling towards the end of '21.* So, all of '22, and even this year, they were like really, really cheap, you know, because there was a flood of them on the market. So, I don't have any of those right now.

CAR at 332 (emphasis added).

The evidence highlighted above not only provide indicia of reliability to Remley's and Koroly's statements but also stand in stark contrast to Petitioner's assertions regarding his involvement with Remley and Koroly. Petitioner claims his purpose for selling firearms to Remley and Koroly was to provide "seed inventory" for their future firearms business venture. CAR at 407, 443–44. While there was evidence presented at the hearing that Remley and Koroly had applied for an FFL, CAR at 352, 450–51, there is substantial evidence that Respondent was aware that Remley and Koroly did not possess an FFL when he sold them firearms.

First, Petitioner is an experienced FFL holder, licensed since 1994. CAR at 564. The "length of time an individual has been licensed" is "relevant to willfulness." *CEW Props. Inc. v. U.S. Dep't of Justice*, 979 F.3d 1271, 1281 (10th Cir. 2020). Based on his experience, Petitioner demonstrated at the hearing a thorough understanding of the firearms business, to include an awareness of the requirement under federal law that one must have an FFL to engage in the business of dealing in firearms. CAR at 127–28; 341–42. Despite this understanding, Petitioner continued dealing and selling firearms to Remley and Koroly by recording the transfers on ATF Forms 4473, and thereby demonstrated deliberate disregard of or plain indifference to a known legal obligation.

12

Second, as Petitioner explained, when he acquired his FFL, he did not begin acquiring firearms prior to being issued a license. *See* CAR at 454 ("I didn't start my business as a licensed dealer until I had my FFL."). Consequently, Petitioner did not have to pay full retail price for any firearms when building up his initial inventory. Yet, if Petitioner's claims regarding a "seed inventory" are to be believed, one would have to accept that Remley and Koroly were not only willing to pay full retail price for each firearm, *see* CAR at 455 ("I sold firearms to Remley at my mark-up price"), but were also willing to pay sales tax on each firearm purchased from Petitioner, CAR at 441–444, 450, . . . *all with cash*, CAR at 440 ("I think he paid with cash except for one debit card. I don't know if that was a firearm if that was ammo."). Given such absurdities, Respondent was more than justified in refusing to accept Petitioner's claims.

Finally, Petitioner asserted at the hearing that he had entered into a Rental Agreement with Remley and Koroly so the two of them could use a separate area of his residence to set up their future firearms business. *See* CAR at 173, 351–52. Petitioner submitted that Remley and Koroly intended on storing their firearms inventory in this separate area. CAR at 352. Yet, the photos presented by the Petitioner of this separate area fail to show any firearms. *See* CAR at 176–77. Furthermore, Petitioner never offered at the hearing that he witnessed Remley or Koroly storing this "seed inventory" in this separate area, despite processing numerous multiple sales of numerous firearms to Remley and Koroly. Therefore, the evidence presented by Petitioner himself undermines his own claims.

Even if Petitioner's claim that the sales were to provide "seed inventory" for Remley's and Koroly's new firearms business is accepted as true, it does not alter the outcome of this Petition. Petitioner's claim would still support ATF's decision to revoke his license for making false statements on ATF Forms 4473. Remley and Koroly falsely identified themselves as the true

purchasers/transferees of the firearms on the Forms, when Petitioner knew these firearms were being purchased for future sales.[7] Thus, Petitioner admits to knowingly making false statements on ATF Form 4473, creating no genuine issue of material fact.[8]

Therefore, in view of all the evidence, Respondent was authorized to revoke Petitioner's FFL after finding Petitioner willfully violated the GCA by aiding and abetting Remley and Koroly engage in the business of dealing in firearms without a license and by making false statements on ATF Form 4473s. The evidence not only corroborates Remley's and Koroly's statements regarding Petitioner's involvement in the conspiracy but also undermines Petitioner's claims he was providing the two with "seed inventory" for their future firearms business. Accordingly, there is substantial evidence of willfulness contained in the CAR to uphold Respondent's revocation of Petitioner's license.

In the instant case, the scope of the court's review is a narrow one: whether Respondent was authorized to revoke Petitioner's FFL. Petitioner's sole remedy is this Court's de novo review, and the Court should deny Petitioner's attempt to find relief in any other fashion. Holding an FFL is a privilege and not a right, and with that privilege comes the responsibility to adhere to the GCA

---

[7] As stated on the ATF Form 4473, "[f]or the purposes of this form, a person is the actual transferee/buyer is he/she is purchasing the firearm for him/herself or otherwise acquiring the firearm for him/herself. (e.g., redeeming the firearm from pawn, retrieving it from consignment, firearm raffle winner). A person is also the actual transferee/buyer if he/she is legitimately purchasing the firearm as a bona fide gift for a third party. A gift is not bona fide if another person offered or gave the person completing this form money, service(s), or item(s) of value to acquire the firearm for him/her, or if the other person is prohibited by law from receiving or possessing the firearm."

[8] In blocks 34 and 35 of the ATF Form 4473, the Transferor certifies on the basis of: "(1) the transferee's/buyer's responses in Section B (and Section D, if applicable); (2) the verification of the identification recorded in question 26 (and the re-verification at the time of transfer, if Section D was completed); and (3) State or local law applicable to the firearms business—it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section B."

rules and regulations. Because Petitioner has failed to meet its responsibility to adhere to the GCA rules and regulations and willfully violated the GCA, ATF was without question authorized to revoke its license.

## **CONCLUSION**

The United States respectfully moves this Court for an order granting summary judgment in favor of the United States pursuant to Rule 56 of the Federal Rules of Civil Procedure, finding that the facts in the record before the Court demonstrate that ATF was authorized to revoke Petitioner's FFL, and for such other and further relief as the Court deems necessary and just.

Respectfully submitted this 19th day of November 2024.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ James Gillingham*
JAMES GARLAND GILLINGHAM
Texas State Bar No. 24065295
james.gillingham@usdoj.gov
110 N. College, Suite 700
Tyler, TX  75702
(903) 590-1400
Fax: (903) 590-1436

*Attorney for Respondent*

On the Brief:

Michael L. Boyer
ATF Office of Chief Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2024, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/ James Gillingham*
JAMES GARLAND GILLINGHAM
Assistant United States Attorney