UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THOMAS ROY HARRIS, JR., d/b/a | § | |
| SPORTING ARMS COMPANY | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-737-SDJ |
| | § | |
| KRISSY Y. CARLSON, in her official | § | **FILED UNDER SEAL** |
| capacity as Director of Industry | § | |
| Operations, Dallas Field Division, | § | |
| Bureau of Alcohol, Tobacco, Firearms | § | |
| and Explosives | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Motion to Defer Summary Judgment Proceedings or, in the Alternative, for Extension of Time. (Dkt. #11). Respondent filed a brief in opposition. (Dkt. #12). Having considered the motion, the parties' briefing, and the applicable law, the Court concludes that the motion should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Petitioner Thomas Roy Harris, Jr. ("Harris") has held a federal firearms license ("FFL") to engage in business as a firearms dealer since 1994. (Dkt. #1 ¶ 5). Harris does business as "Sporting Arms Company," which conducts business as both a retail firearms dealer and a distributor for certain manufacturers. (Dkt. #1 ¶ 5). But after an administrative hearing, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") denied Harris's application to renew his FFL,[1] finding that Harris willfully

---

[1] On February 27, 2024, the ATF held an administrative hearing on its notice to revoke Harris's FFL. (Dkt. #1 ¶ 23). However, Harris's FFL was set to expire on June 1, 2024—

1

violated the Gun Control Act of 1968 (18 U.S.C. §§ 921, *et seq.*), and the regulations issued thereunder (collectively "GCA"). (Dkt. #1 ¶ 29); (Dkt. #18 at 1–2).

The ATF alleges that Harris violated 18 U.S.C. § 922(a)(1)(A) on ten occasions by willfully aiding and abetting a non-licensee in dealing firearms without a license. (Dkt. #1 ¶ 21). Additionally, the ATF asserts that Harris violated 18 U.S.C. § 922(m) and 27 C.F.R. § 478.123(c) on forty-six occasions by willfully making a false statement or representation with respect to information required by the GCA. (Dkt. #1 ¶ 21). These alleged violations all occurred in connection with Harris's transfer of several firearms to Chris Remley ("Remley") and Lane Koroly ("Koroly"). (Dkt. #1 ¶¶ 12, 29).

According to the ATF, Harris began selling firearms to Remley and Koroly after meeting them at a gun show in 2021. (Dkt. #10 at 3). Remley and Koroly purchased forty-six firearms from Harris, attesting each time that Remley was "the actual transferee/buyer of the firearms." (Dkt. #1 ¶ 12). But Remley and Koroly illegally resold the firearms for profit. (Dkt. #1 ¶¶ 14–17). As a result, they were indicted for dealing firearms without a license, and both were convicted after pleading guilty. (Dkt. #1 ¶ 17). The ATF's revocation of Harris's FFL rested on Remley and Koroly's guilty pleas along with the ATF's investigation reports into the two individuals. (Dkt. #18 at 569–72). The pleas for both individuals alleged that Harris was fully aware that Remley and Koroly were not the true purchasers or transferees of the firearms and that they planned to illegally sell the firearms Harris gave them. (Dkt. #18 at 19) (Factual Basis for Chris Remley) ("Any firearms that were purchased

---

before the ATF's revocation decision would be released—so the decision of the hearing was converted to concern whether to deny Harris's renewal application. (Dkt. #1 ¶ 25).

from Thomas Harris, Sporting Arms Company FFL, were done so with Harris'[s] full knowledge that they would be resold for profit and that I was not the true purchaser/transferee."); (Dkt. #18 at 21) (Factual Basis for Lane Koroly) ("Most firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done so with Harris'[s] full knowledge that they would be resold for profit and that I was not the true purchaser/transferee.").

Harris tells a different story. According to him, in September 2021, Remley and Koroly approached Harris for help in starting their own firearms business—Elevated Firearms. (Dkt. #1 ¶¶ 10–13). Harris knew that Remley and Koroly were in the process of obtaining their FFL because an ATF agent interviewed Harris to verify some of Remley and Koroly's qualifications. (Dkt. #1 ¶ 11). Harris transferred forty-six firearms to Remley and completed ten 4473 Forms[2] to supply Elevated Firearms with stock and for Remley's personal use. (Dkt. #1 ¶ 12). Without Harris's knowledge, Remley and Koroly then resold these firearms illegally because they had not yet obtained their FFL. (Dkt. #1 ¶¶ 14–17).

To support his version of events, Harris provided witness statements from Corey Staub ("Staub"), who has worked for another federal firearms licensee, and Slade Turner ("Turner"), another federal firearms licensee. (Dkt. #1 ¶ 16). Both witnesses claimed to know Harris, Remley, and Koroly, and provided their understanding of the events that transpired. Staub and Turner explained that both

---

[2] A Form 4473, or a firearms transaction record, is a form that must be completed for the sale, transfer, or other disposition of a firearm between a federal firearms licensee and a non-licensee. 27 C.F.R. § 478.124(a).

Remley and Koroly had stated that they believed Harris was unaware of their illegal sales. (Dkt. 1 ¶ 16); (Dkt. #18 at 309) (Witness Statement of Corey Staub) ("Remley frequently boasted and laughed that he bought several guns from Sporting Arms to resell them and that [Harris] didn't know he was doing this."); (Dkt. #18 at 169) (Witness Statement of Slade Turner) ("[Remley] asked me not to tell [Harris] that he was selling the shotgun at the Canton flea market."). Nevertheless, the ATF found that Harris's statements and documents "lack[ed] credibility" and that the decision to deny Harris's renewal application was proper. (Dkt. #18 at 572).

Harris filed this lawsuit seeking judicial review of the ATF's decision to revoke his FFL and deny his renewal application. (Dkt. #1 ¶ 1). Respondent Krissy Y. Carlson ("Carlson"), the Director of Industry Operations ("DIO") for the Dallas field division of the ATF, moved for summary judgment before the parties had conducted any discovery. (Dkt. #10). Carlson asserts that "[t]here is no need for the parties to engage in discovery for this Court to conduct its de novo review," and that "the [Certified Administrative Record] contains all evidence necessary for this Court to determine that Respondent was authorized to revoke Petitioner's FFL." (Dkt. #10 at 2). In response, Harris moved to defer summary-judgment proceedings until after limited discovery. (Dkt. #11). In particular, Harris seeks permission to (1) depose Remley and Koroly, (2) obtain the ATF's recordings of Remley's and Koroly's interviews, (3) obtain the ATF's instructions given to DIOs during revocation proceedings, and (4) subpoena the Department of Justice ("DOJ") for records on Remley's and Koroly's criminal proceedings. (Dkt. #11 at 7–11).

## II. Standard of Review

Under the GCA, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under [the GCA] if the holder of such license has willfully violated any provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA.]"[3] 18 U.S.C. § 923(e). A licensee may then appeal to the district court. A district court's review of a license revocation is de novo. 18 U.S.C. § 923(f)(3). While the district court may weigh the ATF's conclusions as it deems appropriate, it need not "attach any presumption of correctness to the ATF's decision." *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 361 (5th Cir. 2017); *see also Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466–67 (7th Cir. 1980) ("the decision of the Secretary is not necessarily clothed with any presumption of correctness or other advantage" (quotation omitted)). The court, in its discretion, "may consider evidence not presented at the administrative hearing," or it "may enter judgment solely based upon the administrative record." 18 U.S.C. § 923(f)(3); *Fairmont Cash Mgmt.*, 858 F.3d at 361–2. "The ultimate decision as to the law and the facts remains with" the district court. *Stein's*, 649 F.2d at 466.

## III. Legal Standard

Under Federal Rule of Civil Procedure 56(d), a court may defer considering a motion for summary judgment and allow the nonmovant time to take discovery if the nonmovant shows that, "for specified reasons, [he] cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). Rule 56(d) motions are broadly favored

---

[3] The Attorney General has delegated this authority to the ATF under 28 C.F.R. § 0.130. *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 361 (5th Cir. 2017).

"[t]o provide litigants time to develop facts necessary to defend their claims," and "should be liberally granted." *Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022) (quotation omitted).

The movant must show how additional discovery will create a genuine issue of material fact and may not rely on vague assertions or speculation. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991); *see also January v. City of Huntsville*, 74 F.4th 646, 651–52 (5th Cir. 2023) (holding that providing a list of discovery sought without specifying which facts the discovery would support or how the "emergent facts" would influence the outcome of summary judgment is insufficient to warrant additional time for discovery). In the context of petitions for review brought under Section 923(f)(3), a district court may allow for additional discovery when it would be useful for resolving a pending summary-judgment motion. *See Crusader Gun Grp., L.L.C. v. James*, 118 F.4th 648, 654 (5th Cir. 2024) (quoting *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F.App'x 866, 870 (5th Cir. 2010) (per curiam) ("Where discovery would not be useful to the resolution of a pending summary judgment motion presenting a question of law, it is not an abuse of discretion to grant such a motion to stay discovery." (citation modified))). Ultimately, "it is a court's own decision whether to receive evidence in addition to the administrative record." *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F.Supp.2d 754, 758 (S.D. Tex. 2007).

## IV. DISCUSSION

Harris requests four categories of discovery. After reviewing each request, the Court grants in part and denies in part Harris's discovery requests under Rule 56(d) because he has shown that only some of the requested discovery may create genuine issues of material fact.

### A. Depositions of Remley and Koroly

Harris principally seeks to defer summary-judgment proceedings so that he can depose Remley and Koroly. (Dkt. #11 at 7). Remley's and Koroly's guilty pleas underpin nearly the entire factual basis of the ATF's claim that Harris violated the GCA. *See* (Dkt. #18 at 569–72) (Findings of the ATF Hearing). But Harris has continually denied any knowledge of Remley and Koroly's illegal activities. *See, e.g.*, (Dkt. #1 ¶ 13) ("Petitioner believed that Remley and Koroly were operating in compliance with federal firearms laws."). And through Staub and Turner's declarations, Harris has given this Court reason to question the credibility of Remley's and Koroly's statements. *See* (Dkt. #18 at 169, 309) (Staub and Turner's Statements); (Dkt. #1 ¶ 16).

Harris believes that by deposing Remley and Koroly he can "elicit testimony directly probative of their truthfulness," "show that Remley and Koroly . . . are not credible," and demonstrate "that Remley and Koroly *falsely* accused [Harris] of backfilling Form 4473s, which is a practice that [Harris] suspects Remley has used elsewhere." (Dkt. #11 at 7). These are not "vague assertions," but instead specifically show how deposing Remley and Koroly will influence the outcome of summary judgment, because a genuine dispute of Remley and Koroly's credibility may preclude

summary judgment. *See Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) ("[A] motion for summary judgment cannot be defeated solely by conclusional allegations that a witness lacks credibility. Nevertheless, . . . when questions about the credibility of key witnesses loom as large as they do here, summary judgment is inappropriate."); *see also Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 81 (5th Cir. 1987) ("[W]here specific facts are alleged that if proven would call the credibility of the moving party's witness into doubt, summary judgment is improper.") Further, Remley and Koroly's credibility is a material fact that "looms large." Because Remley and Koroly are the ATF's key witnesses, if they are not credible, the main issue of the case—whether Harris "willfully violated" the GCA—is called into question. *Cf Weaver v. Harris*, 486 F.App'x 503, 506 (5th Cir. 2012) (per curiam) (denying additional discovery because proposed discovery was unrelated to whether GCA violations were willful, and therefore not reasonably calculated to lead to discovery of admissible evidence); *Moreno v. Bureau of Alcohol, Tobacco, Firearms, Explosives*, 113 F.Supp.3d 916, 922 (W.D. Tex. 2015) (citing *Weaver*, 486 F.App'x at 505–06). Accordingly, Harris's request to depose Remley and Koroly will be granted.

### B. Discovery of Recordings of the Remley and Koroly Interviews

The Court also finds that it would be useful to grant Harris's request for the recordings of Remley's and Koroly's ATF interviews. The Supreme Court has emphasized the importance of "the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said" when determining the credibility of a witness. *Anderson v. City of Bessemer City,* 470 U.S.

564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Yet here, the administrative record contains only summaries of the interviews conducted by the ATF agents, while acknowledging that recordings of those interviews exist. *See* (Dkt. #18 at 25) ("The above is a summary of the interview; refer to the recording for all statements made."). Harris believes that the audio recordings of the ATF's interviews will provide better insight into the accuracy of the ATF's written summaries, and, like the depositions, may help demonstrate that Remley and Koroly's statements lack credibility. (Dkt. #11 at 9).

As stated above, Harris has given this Court reason to question Remley's and Koroly's credibility. *See* (Dkt. #18 at 309) (Witness Statement of Corey Staub); (Dkt. #18 at 169) (Witness Statement of Slade Turner); (Dkt. #1 ¶ 16). Therefore, the Court finds that the recordings of Remley's and Koroly's interviews will be useful in resolving the ATF's pending summary-judgment motion. *See Thomas*, 233 F.3d at 331 (explaining why witness credibility impacts summary judgment); *Int'l Shortstop*, 939 F.2d at 1267 (explaining requirements for additional discovery to be granted). Accordingly, Harris's request for the recordings of Remley's and Koroly's interviews will be granted.

### C. Discovery of Instructions to Directors of Industry Operations

Harris also requests permission to conduct written discovery so he can "request from the ATF any instructions provided to directors of industry operations—or other officials when deciding revocation (and similar) proceedings—over recent years." (Dkt. #11 at 10). But, unlike his first two requests, Harris's justifications for this request are vague and speculative.

9

Harris argues that any instructions the ATF provided to directors of industry operations will help determine "the fairness of the administrative proceedings" and could "compel viewing those administrative proceedings with skepticism." (Dkt. #11 at 10). However, other than providing an article explaining the effect that the Biden administration's "zero tolerance policy" has had in increasing the rate at which FFLs were revoked, Harris provides no reasonable basis for the Court to believe that his administrative proceeding was unfair. (Dkt. #11 at 10). Therefore, the Court does not believe that this request would be useful in resolving the ATF's pending summary-judgment motion, and the request will be denied. *See Weaver*, 486 F.App'x at 506 (denying discovery of internal ATF materials because the proposed inquiry was unrelated to the issue of willfulness and not reasonably calculated to lead to the discovery of admissible evidence); *Int'l Shortstop*, 939 F.2d at 1267 (explaining requirements for additional discovery to be granted).

### D. Subpoenas to DOJ Concerning Criminal Proceedings

Finally, Harris's justification for his request "to send a subpoena to the Department of Justice to obtain records related to Remley's and Koroly's criminal proceedings," (Dkt. #11 at 10), is also speculative. Harris suggests that if "an agreement (or offer) for a downward-departure recommendation was made in exchange for Remley's or Koroly's 'corroboration' against [Harris], such evidence would illustrate their biases against Petitioner and severely undermine [Carlson's] arguments." (Dkt. #11 at 11). Carlson has stated that neither Remley nor Koroly "receive[d] any favorable treatment from the ATF" by explaining Harris's alleged involvement in the conspiracy. (Dkt. #10 at 10–11). While Harris points out that

"[Remley's and Koroly's] statements would lack credibility even if they merely *thought* that they *might* receive favorable treatment," the Court does not believe that allowing a subpoena directed to the DOJ would help resolve the ATF's pending summary-judgment motion. (Dkt. #14 at 5); *see Int'l Shortstop*, 939 F.2d at 1267 (explaining requirements for additional discovery to be granted). Any useful information that might come from such a subpoena may be obtained through the other discovery this Court is allowing Harris to conduct. For example, Harris can ask Remley or Koroly during their depositions if they were offered or thought they might be offered an agreement in exchange for their statements against him. Harris can also listen to the recordings of their ATF interviews to discern whether Remley or Koroly had any reason to believe that the ATF would provide favorable treatment in exchange for their statements implicating Harris. For the reasons stated above, this Court therefore denies Harris's request to subpoena the DOJ for records related to Remley's and Koroly's criminal proceedings.

*        *        *

This Court has the authority to grant additional discovery if it believes such discovery would help resolve the ATF's pending summary-judgment motion. *See Crusader Gun Grp.,* 118 F.4th at 654 (explaining when a district court should grant discovery when reviewing an ATF decision). Harris has shown how deposing Remley and Koroly and obtaining recordings of their ATF interviews could help resolve the pending summary-judgment motion. But Harris has not shown how his requests for the ATF's instructions to DIOs or subpoenas to the DOJ will create genuine issues of

material fact. Because the Court has granted Harris' motion in part, it denies his alternative request for extension of time.

### V. Conclusion

It is therefore **ORDERED** that Plaintiffs' Motion to Defer Summary Judgment Proceedings or, in the Alternative, for Extension of Time, (Dkt. #11), is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that the stay of proceedings in this case is **LIFTED**. Plaintiff Harris may conduct the discovery authorized by this Order, which shall be completed by no later than **April 30, 2026**. The Court defers consideration of Respondent's Motion for Summary Judgment, (Dkt. #10), pending the completion of such discovery.

Plaintiff Harris must file his response to the pending summary-judgment motion by **May 15, 2026**. Respondent may file a reply in support of summary judgment by no later than **May 22, 2026**.

**So ORDERED and SIGNED this 24th day of February, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE