## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| THOMAS ROY HARRIS, JR., doing business as SPORTING ARMS COMPANY, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. 4:24-cv-00737-SDJ |
| KRISSY Y. CARLSON, in her official capacity as Director of Industry Operations, Dallas Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives, | ) ) ) ) ) ) | |
| Respondent. | ) | |

## PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Brian M. Gillett
  Texas Bar No. 24069785
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Phone: (214) 257-8700
Facsimile: (214) 939-8787
bgillett@bradley.com

James W. Porter, III
  *Admitted Pro Hac Vice*
  Alabama Bar No. 1704J66P
W. Chadwick Lamar, Jr.
  *Admitted Pro Hac Vice*
  Alabama Bar No. 4176M12Z
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue N.
Birmingham, AL 35203
Phone: (205) 521-8000
Facsimile: (205) 521-8800
jporter@bradley.com
clamar@bradley.com

*Counsel for Petitioner Thomas Roy Harris, Jr.,*
*doing business as Sporting Arms Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 4

SUMMARY JUDGMENT STANDARD............................................................................ 10

ARGUMENT ...................................................................................................................... 11

    I.     Section 923(f)(3) requires this Court to decide de novo whether Harris
         willfully violated the Gun Control Act without any deference to the ATF's
         findings. ................................................................................................................ 11

    II.    Summary judgment is improper because Harris has demonstrated genuine
         disputes of material fact as to whether he willfully violated the Gun Control
         Act.......................................................................................................................... 14

         A.    Harris's testimonial and documentary evidence establishes that he did not
              violate the Gun Control Act. ...................................................................... 15

         B.    The accusations of Remley and Koroly are unreliable and insufficient to
              support summary judgment to the ATF. ..................................................... 17

              1.     The Court should draw an adverse inference based on
                    Remley's and Koroly's Fifth Amendment invocations. .............. 17

              2.     Remley's and Koroly's accusations are false and unreliable........ 21

         C.    The ATF's evidence is genuinely disputed, immaterial, or both.............. 25

    III.   The ATF's alternative post-hoc justification is procedurally improper and
         substantively wrong. ............................................................................................ 28

CONCLUSION................................................................................................................... 30

CERTIFICATE OF SERVICE .......................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariana M. v. Humana Health Plan of Tex., Inc.*,
884 F.3d 246 (5th Cir. 2018) (en banc) ...................................................................12

*Chamberlain v. Dry Dock Bar & Grill, Inc.*,
2023 WL 4246069 (N.D. Miss. June 28, 2023)........................................................18

*In re Cowin*,
492 B.R. 858 (Bankr. S.D. Tex. 2013) ....................................................................18

*Crusader Gun Grp., L.L.C. v. James*,
118 F.4th 648 (5th Cir. 2024) ...................................................................................13

*Data Mktg. P'ship v. U.S. Dep't of Labor*,
45 F.4th 846 (5th Cir. 2022) .....................................................................................29

*Davis-Lynch, Inc. v. Moreno*,
667 F.3d 539 (5th Cir. 2012) ....................................................................................21

*In re Deepwater Horizon*,
858 F.3d 298 (5th Cir. 2017) ....................................................................................12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)......................................................................................................29

*Doe v. United States*,
821 F.2d 694 (D.C. Cir. 1987) (en banc)..................................................................12

*Dyer v. Houston*,
964 F.3d 374 (5th Cir. 2020) ....................................................................................11

*F.D.I.C. v. Fidelity & Deposit Co. of Md.*,
45 F.3d 969 (5th Cir. 1995) ......................................................................................18

*Fairmont Cash Mgmt., L.L.C. v. James*,
858 F.3d 356 (5th Cir. 2017) ..............................................................................10, 13

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
2017 WL 3236110 (S.D. Tex. July 31, 2017)...........................................................18

*Hassan v. City of Shreveport*,
2018 WL 3028951 (W.D. La. June 18, 2018) ...........................................................18

*Heinsohn v. Carabin & Shaw, P.C.*,
   832 F.3d 224 (5th Cir. 2016) ...................................................................................17

*Koerner v. CMR Const. & Roofing, L.L.C.*,
   910 F.3d 221 (5th Cir. 2018) ..............................................................................11, 22

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*,
   831 F.2d 77 (5th Cir. 1987) ................................................................................17, 25

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)...............................................................................................13

*Luna v. Davis*,
   59 F.4th 713 (5th Cir. 2023) ...................................................................................17

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974)..................................................................................................12

*Rosemond v. United States*,
   572 U.S. 65 (2014) ................................................................................................14

*Stein's, Inc. v. Blumenthal*,
   649 F.2d 463 (7th Cir. 1980) ..............................................................................13, 14

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   737 F. Supp. 3d 426 (N.D. Tex. 2024) ....................................................................27

*Thryv, Inc. v. NLRB*,
   102 F.4th 727 (5th Cir. 2024) .................................................................................29

*United Nat'l Foods, Inc. v. NLRB*,
   138 F.4th 937 (5th Cir. 2025) .................................................................................13

*United States v. 4003–4005 5th Ave.*,
   55 F.3d 78 (2d Cir. 1995) .......................................................................................21

*United States v. Chris Remley*,
   No. 4:23-cr-263 (E.D. Tex.)......................................................................................7

*United States v. First City Nat'l Bank of Hous.*,
   386 U.S. 361 (1967)...............................................................................................12

*United States v. Fountain*,
   277 F.3d 714 (2001)...............................................................................................14

*United States v. Lane Koroly*,
   No. 4:23-cr-221 (E.D. Tex.)......................................................................................7

iii

*United States v. Raddatz,*
    447 U.S. 667 (1980)...........................................................................................12

*United States v. Wilson*,
    864 F.2d 1219 (5th Cir. 1989) ....................................................................12, 14

*Urias-Orellana v. Bondi*,
    146 S. Ct. 845 (2026)........................................................................................13

*Van Buren v. United States*,
    593 U.S. 374 (2021)..........................................................................................13

*Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*,
    920 F.3d 958 (5th Cir. 2019) .................................................................11, 24, 25

**Statutes**

18 U.S.C. § 921.............................................................................................7, 26

18 U.S.C. § 923(f)(3) ................................................................................. *passim*

18 U.S.C. § 1001(a) ....................................................................................11, 21

Fed. R. Civ. P. 56................................................................................................11

Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986)..............................12

**Other Authorities**

27 C.F.R. § 478.125(e)........................................................................................28

27 C.F.R. § 478.125a..........................................................................................27

99 Cong. Rec. S17003 (daily ed. June 24, 1985) ..............................................12

*Revising Regulations Defining "Engaged in the Business" as a Dealer in
    Firearms*, 91 Fed. Reg. 24424 (May 6, 2026) ..............................................27

Petitioner Thomas Roy Harris, Jr., doing business as Sporting Arms Company ("Harris"), opposes the motion for summary judgment filed by Respondent Krissy Y. Carlson, in her official capacity as Director of Industry Operations, Dallas Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Respondent" or "ATF"). (Dkt. #10).

**INTRODUCTION**

This is an action for "de novo judicial review" of the ATF's administrative decision to revoke Harris's federal firearms license and deny his renewal application. 18 U.S.C. § 923(f)(3). The ATF based its underlying decision on the entirely disputed and unreliable accusations of Chris Remley and Lane Koroly—both convicted of illegally selling firearms—that Harris sold them firearms knowing that they would be unlawfully resold as part of a "conspiracy" to sell down Harris's inventory. The ATF seeks summary judgment based on nothing more than (1) its hope for this Court's credulous deference to the ATF's findings; and (2) its regurgitation of Remley's and Koroly's disputed and unreliable accusations. Deference is improper under Section 923(f)(3) and under Rule 56—in any event, the ATF's case is built solely on unreliable evidence that counsels against deference. The Court allowed Harris to take Remley's and Koroly's depositions and to obtain recordings of their ATF interviews, and that discovery confirmed that their accusations should receive no weight. Harris has demonstrated, at minimum, genuine disputes of material fact as to whether he violated the Gun Control Act that defeat the ATF's motion for summary judgment.

The genuine fact disputes at the core of this case will require this Court to determine the credibility of conflicting narratives advanced by the testimony of Harris and Remley. The ATF's underlying decision concerns 46 firearms that Remley purchased from Harris in 2021–22. Harris's evidence demonstrates that Remley substantiated the legitimacy of each firearm purchase as for personal use, a gift, or "seed inventory" for the firearms business that Koroly and he were in the process of starting. Harris's evidence shows that he never sold a firearm to Remley or Koroly with

1

knowledge that it would be unlawfully resold. Remley, by contrast, claims that he and Koroly conspired with Harris to illegally sell firearms as part of an effort to move firearms out of Harris's inventory. That fact dispute cannot be resolved at summary judgment.

For the reasons below, the ATF's motion for summary judgment should be denied and the Court should set an evidentiary hearing to assess the credibility of the parties' witnesses and to make findings as to whether Harris knew that Remley and Koroly were unlawfully selling firearms.

***First***, the ATF's findings are entitled to no deference. Congress unambiguously mandated "de novo" review in Section 923(f)(3) proceedings. This Court must conduct an entirely independent assessment of all relevant factual and legal issues. The ATF must therefore carry its burdens of proof and persuasion that Harris willfully violated the Gun Control Act without any benefit of deference. Section 923(f)'s "de novo" standard precludes deferentially adopting the ATF's credibility determinations, just as Federal Rule of Civil Procedure 56 precludes this Court from resolving genuine disputes of material fact against the non-moving party.

***Second***, Harris has demonstrated genuine disputes of material fact as to whether he violated the Gun Control Act, which preclude summary judgment. His testimony and documentary evidence at the administrative hearing support reasonable findings that he never sold a single firearm to Remley or Koroly with knowledge that it would be unlawfully resold for profit, and that he was not part of any conspiracy to illegally sell firearms. He also presented corroborating testimony from multiple witnesses, including that Remley actively concealed the illegal firearm-reselling scheme from Harris. And Harris's documentary evidence further corroborates that he faithfully and lawfully discharged his duties as a federal firearms licensee.

In addition to being genuinely disputed by Harris's evidence, the ATF's primary evidence (consisting solely of Remley's and Koroly's self-serving and uncorroborated accusations) is

unreliable. ***For one***, this Court should infer that both Remley and Koroly collusively lied both to the ATF and to their sentencing courts. Koroly pleaded the Fifth Amendment when asked about whether he and Remley colluded to falsely accuse Harris of misconduct. Remley invoked his right to remain silent to nearly every single question asked during his deposition (**516 times in total**), including when asked whether he lied to the ATF about Harris. ***For another***, their accusations are otherwise unreliable. Remley's narrative in his interviews, for example, is full of impossibilities and material inconsistencies. Koroly's proffer interview statements are based on speculative assumptions and parroting of information supplied by Remley. Both of them had reason to lie to minimize the consequences of their own admitted criminal violations of the Gun Control Act.

The ATF attempts to spin Harris's testimony and evidence to support its case. But each argument is meritless and fails to view the evidence in Harris's favor, as this Court must at summary judgment. It also advances new legal theories that were not alleged or decided at the administrative stage. For example, the ATF now argues that the 16 firearms Harris sold as "seed inventory" for Remley's and Koroly's future FFL business support his revocation because Harris "knew these firearms were being purchased for future sales." (Dkt. #10 at 13–14). A federal agency cannot justify agency action through post hoc justifications or convenient litigation positions. In any event, the agency's new arguments are substantively wrong. Nothing in the Gun Control Act prohibits an individual like Remley from purchasing firearms that he intends to repetitively resell *only once he acquires a federal firearms license*, which Remley was in the process of obtaining at the time of the transactions. Harris's certification of the Forms 4473 for those transactions did not constitute a false statement—only Remley knowingly made false statements on those forms.

The ATF's administrative revocation—based on nothing more than Remley's and Koroly's concocted self-serving and false narrative—has forced Harris, a law-abiding citizen and 27-year

3

federal firearms licensee, to exhaust his resources to regain his livelihood and clear his name. Harris's evidence reasonably supports conclusions that he had no knowledge of Remley's and Koroly's criminal activities, and thus that he did not aid or abet any unlawful firearms dealing or make any false statements in an ATF Form 4473. Harris respectfully requests that this Court deny the ATF's motion for summary judgment and set an evidentiary hearing.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner Tom Harris obtained a federal firearms license (FFL) in 1994. (Admin. Record (AR) 329:12–13). Harris operated Sporting Arms Company, which was both a retail firearms dealer and wholesale distributor to other FFLs, until the ATF revoked his license in 2024. (AR336:13–16). Harris has always been a home-based dealer. (AR323:4–11).

Harris operated Sporting Arms Company in full compliance with the strict requirements of the Gun Control Act and ATF regulations governing firearms dealers, with the exceptions of minor recordkeeping errors identified in 2007, 2019, and 2022. (*See* AR483:11–484:14; *see also* AR2). Harris has poor vision, but that challenge has not deterred him from faithfully discharging his responsibilities as a federal firearms licensee. (*See* AR198). ███████████

████████████████████████████

██████████████████

Chris Remley and Lane Koroly, friends since childhood, were around 25 years old in Spring 2021. (Ex. A, Koroly Dep., at 19:8–20:1; AR18; AR24). Remley was involved in a business called "Freedom Seeds," which sold ammunition at gun shows, along with a man named John

---

[1] This Court's Order Governing Proceedings (Dkt. #9 at 6) and Local Civil Rule 56(a) required the ATF to submit "a statement of the issues to be decided by the court" and "a 'Statement of Undisputed Material Facts.'" The ATF failed to provide either statement, which prevents Harris from providing the required "response[s]" specified by Local Civil Rule 56(b). Nevertheless, Harris has genuinely disputed the material facts presented in the ATF's motion.

Andersen. (Ex. A at 21:7–23:8). In Spring 2021, Remley asked Koroly to help sell ammunition at gun shows, and Koroly agreed. (Ex. A at 21:7–11). ████████████████████████

████████████████████████████████████████████████████████

████████████████   ████████████████████████████████████████

Remley and Koroly eventually started purchasing firearms, including from Harris. (*See* Ex. A at 42:12–22). Koroly first purchased a firearm from Harris around June 2021. (Ex. A at 238:15–25). Between June 2021 and September 2021, he acquired approximately 70 firearms from Harris, which included pistols but also many rifle lower receivers that he transferred through Harris from out-of-state dealers. (*Id.* at 41:14–42:11, 234:8–12). ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

It was not unusual for customers to purchase firearms from Harris in quantities that approximated or exceeded the amounts that Remley and Koroly purchased. ████████████████

████████████████████████████████████████████████████████

████Further, 2020 and 2021 saw record-high firearms sales, and demand was abnormally high while supply was abnormally low. (*See, e.g.*, AR327:2–11; AR466:24–467:1; Ex. A at 89:12–15).[2]

Harris did not know that Remley and Koroly were purchasing firearms they intended to unlawfully resell. (AR460:6–462:8; AR484:7–11). At his deposition, Koroly admitted that his transactions appeared "normal": He marked on the Form 4473 that he was the "actual transferee" and never told Harris that he intended to resell the firearm. (Ex. A at 43:7–12, 46:22–47:2, 48:8–50:2). ████████████████████████████████

---

[2] *See also NSSF Retailer Surveys Indicate 5.4 Million First-Time Gun Buyers in 2021*, NSSF (Jan. 25, 2022); *Taking Stock of Record-Setting 2020 Firearm Year*, NSSF (Jan. 7, 2021).

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Remley and Koroly executed Forms 4473 for each firearm, without marking that they were straw purchasers or otherwise were illegitimate purchasers. (*See* AR28–126; AR460:6–462:8; Ex. A at 47:3–50:2). ████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████. The submission of those Reports of Multiple Sale can trigger ATF inquiry into the customer for potential trafficking. (Ex. A at 169:19–24; AR21 ¶ 3). That Harris submitted such reports knowing they might lead the ATF to inquire of the circumstances undercuts the narrative that Harris knew Remley and Koroly were selling firearms. ████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████The simplest answer is the correct one: He would not. Harris did not know that Remley and Koroly were reselling firearms.

Remley and Koroly began an effort, in September 2021, to obtain an FFL and start a business called "Elevated Firearms." (AR347:19–23; Ex. A at 57:7–62:25). They sought advice from Harris on navigating the process. (AR451:8–11; Ex. A at 62:9–17). ██████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

6

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Remley and Koroly conspired to deceive Harris. Both admitted to extensive illegal reselling of firearms for profit, including firearms purchased from Sporting Arms Company and elsewhere. (AR14; AR16). The ATF interviewed Koroly at his home in September 2021, and then in a formal proffer in October 2022.[3] The ATF interviewed Remley in July 2022, September 2022, October 2022, March 2023, and April 2023.[4] █████████████████████████████

████████████████████████████████████ And the ATF cleared Harris. (AR172). But, by Fall 2022, Remley and Koroly had retained attorneys and began to accuse Harris of knowledge of their criminal activity. (*See* AR18; AR21; Ex. D; Ex. H).

Remley and Koroly were indicted for unlicensed dealing in violation of 18 U.S.C. § 921(a)(1)(A), in Fall 2023. *United States v. Chris Remley*, No. 4:23-cr-263 (E.D. Tex.); *United States v. Lane Koroly*, No. 4:23-cr-221 (E.D. Tex.). In connection with their guilty pleas, Remley and Koroly signed nearly identical documents that stated in relevant part:

> Remley: "From October 2021 through January 2022, I willfully engaged in the business of dealing firearms. During that time, I sold approximately 62 firearms for profit. . . . Any firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done so with Harris' full knowledge that they would be resold for profit and that I was not

---

[3] *See* Ex. C (Koroly Sept. 24, 2021 Interview Recording); Ex. D (Koroly Oct. 12, 2022 Proffer Recording). These recordings demonstrate that Koroly's accusations against Harris are built on speculation, implausible assumptions, and lies told to him by Remley. *Infra* at 23–25.

[4] Ex. E (Remley July 7, 2022 Interview Recording); Ex. F (Remley July 27, 2022 Interview Recording); Ex. G (Remley Sept. 20, 2022 Proffer Recording); Ex. H (Remley Oct. 19, 2022 Proffer Recording); Ex. I (Remley Mar. 29, 2023 Proffer Recording); Ex. J (Remley Apr. 28, 2023 Proffer Recording). These recordings illustrate that Remley is unreliable and dishonest. His narrative constantly changed, adapting to fit his own perceived needs as the ATF's investigation continued. At first, he lied to the ATF that he did nothing illegal. But later, once he was pinned down, he began to falsely accuse Harris of misconduct to shift blame elsewhere.

the true purchaser/transferee. With Harris' full knowledge and aid, I would falsely state on the 4473 that I was the true purchaser/transferee." (AR14 ¶¶ 4–5).

Koroly: "From March 2021 through September 2021, I willfully engaged in the business of dealing firearms. During that time, I sold approximately 118 firearms for profit. . . . Most firearms that were purchased from Thomas Harris, Sporting Arms Company FFL, were done so with Harris' full knowledge that they would be resold for profit and that I was not the true purchaser/transferee. With Harris' full knowledge and aid, I would falsely state on the 4473 that I was the true purchaser/transferee." (AR16 ¶¶ 4–5).

The district court sentenced Remley to 36 months' probation, even though Sentencing Guidelines called for 30–37 months of imprisonment. (Docs. 26, 27, No. 4:23-cr-263). The court sentenced Koroly to 60 months' probation, even though the Sentencing Guidelines called for 37–46 months of imprisonment. (Docs. 22, 23, No. 4:23-cr-221).

Remley and Koroly had obvious reasons to falsely accuse Harris of knowledge of their criminal activity. *Infra* at 24–25. And the ATF's then-existing enforcement priorities explain why the ATF welcomed Remley's and Koroly's fabricated accusations: During the Biden Administration, the ATF revoked record numbers of federal firearms licenses, and its enforcement practices disproportionately impacted "small" and "home-based" dealers.[5] Remley and Koroly provided narratives that fit the ATF's enforcement priorities.

The ATF originally cleared Harris of any wrongdoing. (AR172). But after Remley and Koroly changed their stories, the ATF served Harris with a notice to revoke in June 2023. (AR1–2). The notice alleged that Harris (1) "willfully aided and abetted a non-licensee in dealing firearms without a license" "[o]n 10 occasions"; and (2) "willfully made a false statement or representation

---

[5] *See ATF Steps Up Policing of Lawbreaking Gun Dealers, Revoking Highest Number of Licenses in Two Decades*, The Trace (Oct. 23, 2024) (providing revocation data); *NSSF Praises DOJ and ATF Announcement Eliminating Biden-Era 'Zero-Tolerance' Policy*, NSSF (Apr. 7, 2025) ("During the Biden administration, FFL warning letters and license revocations reached a blistering pace and had devastating effects on small businesses."); *'Kitchen-Table' Gun Dealers Rack Up ATF Violations*, The Trace (May 28, 2021) ("some of those who face the strictest penalties are home-based sellers").

with respect to information required by the GCA" "[o]n 46 occasions." (AR2). The ATF alleged that Harris aided and abetted Remley (not Koroly) and made false statements on 10 sets of Forms 4473, concerning 46 firearms that Remley acquired from Harris over the course of 10 transactions. (*See* AR396:7–21 (ATF lawyer explaining allegations); AR24–27 (Remley identifying 46 firearms, purchased across 10 transactions, that he bought from Harris and resold)).

The ATF held a revocation hearing in February 2024. (AR7). Neither Remley nor Koroly was present. The ATF's only evidence was agent-drafted summaries of Remley's October 2022 and April 2023 proffers; an agent-drafted summary of Koroly's October 2022 proffer; Remley's and Koroly's factual bases; and Remley's Forms 4473. (AR14–126). The ATF otherwise left it to Harris to prove his own innocence. (AR381:7 ("Sir, it's your show.")).

And Harris did, providing testimonial and documentary evidence to dispute Remley's, Koroly's, and the ATF's false allegations. (AR127–305 (documents); AR310–492 (hearing transcript, including testimony by Harris and Corey Staub)). ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ Harris demonstrated that he never sold a firearm to Remley or Koroly with any reason to suspect that they intended to unlawfully resell it. (*See, e.g.*, AR384:23–25; AR460:6–461:8). ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ In other words, Harris established that he never aided and abetted any unlawful dealing and made no false statements.

The ATF issued a Final Notice of Revocation on June 18, 2024. (AR562–567). The ATF accepted Remley's and Koroly's self-serving accusations as fact, rejected Harris's evidence as

9

"lack[ing] credibility," and concluded that Harris willfully violated the Gun Control Act by aiding and abetting Remley and by making false statements on Forms 4473. (*Id.*).[6] The ATF revoked Harris's license and denied his renewal application. (AR567).

Harris timely filed his Petition for De Novo Judicial Review. (Dkt. #1). The ATF immediately moved for summary judgment, asking for the Court's deference to and substantial-evidence review of the ATF's administrative decision. (Dkt. #10). This Court deferred summary judgment and provided Harris an opportunity to take limited discovery. (Dkt. #28). The ATF produced six interview recordings for Remley (Exs. E–J) and two interview recordings for Koroly (Exs. C–D). Harris deposed Remley on April 17, 2026. (Ex. B). Remley invoked his Fifth Amendment right to remain silent 516 times, and he otherwise did not take the deposition seriously. (*See id.*).[7] Harris deposed Koroly on April 13, 2026. (Ex. A). Koroly invoked his right to remain silent when asked questions about whether Remley and he collusively lied about Harris's alleged misconduct. *See infra* at 18–21.

---

[6] The Final Notice misunderstood Harris to have argued that all 46 firearms "were 'seed' inventory." (AR566 ¶ 13). The ATF repeats that mistake in its motion. (Dkt. #10 at 5). That is wrong: ██████████ ██████████ The Final Notice also misunderstood Harris to have argued that "Remley and Koroly took advantage of an elderly, disabled individual." (AR567 ¶ 15). That, too, is wrong: ████████████████████████████████████ ████████████████████████████████████████████████ The evidence shows that Harris is fully capable of discharging his obligations as a federal firearms licensee, and the ATF did not base its decision on Harris's vision capacity. (AR483:11–484:12).

[7] In the middle of questioning, Remley began using his phone (which he was hiding behind his cowboy hat) to sell a grill. (Ex. B at 25:7–27:1).

## SUMMARY JUDGMENT STANDARD

The summary-judgment standard under Rule 56 applies to Section 923(f) proceedings. *See Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 360 (5th Cir. 2017). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation omitted). "A fact is material if its resolution could affect the outcome of the action." *Id.* at 379 (quotation marks and citation omitted). "The question at summary judgment is whether the record, taken as a whole, could lead a rational trier-of-fact to find for the non-moving party." *Koerner v. CMR Const. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (quotation marks, alteration, and citation omitted). The nonmoving party's "evidence must be taken as true," and the court must view all evidence "in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (citations omitted); *see also id.* ("Credibility determinations have no place in summary judgment proceedings.").

## ARGUMENT

The ATF's motion for summary judgment should be denied. Section 923(f)(3) requires this Court to independently assess whether Harris willfully violated the Gun Control Act without any deference to the ATF's findings. And Harris has demonstrated, at the very least, genuine disputes of material fact as to whether he violated the Gun Control Act.

I.      **Section 923(f)(3) requires this Court to decide de novo whether Harris willfully violated the Gun Control Act without any deference to the ATF's findings.**

The ATF asks this Court to defer to the ATF's administrative findings absent "substantial doubt" and to review the ATF's fact-findings under a "substantial evidence" standard. (Dkt. #10

11

at 2, 7–14). That is wrong. Section 923(f)(3) requires this Court to decide de novo whether Harris willfully violated the Gun Control Act without any deference to the ATF's findings.

*First*, the Gun Control Act unambiguously requires this Court to conduct "de novo judicial review" of the ATF's revocation decision. 18 U.S.C. § 923(f)(3). The term "de novo" requires this Court to make "a fresh, independent determination" of the ATF's decision. *See In re Deepwater Horizon*, 858 F.3d 298, 303 (5th Cir. 2017) (quoting *Doe v. United States*, 821 F.2d 694, 697–98 (D.C. Cir. 1987) (en banc)).[8] The "substantial evidence" standard is inapplicable and no "deference [is] due [to] the agency's conclusion." *Doe*, 821 F.2d at 697–98. This Court must "independent[ly]" determine whether the ATF's findings are correct and whether Harris willfully violated the Gun Control Act. *See id.* Deference or substantial-evidence review is improper.[9]

*Second*, Section 923(f)(3)'s statutory history confirms that any deference—including to the ATF's fact-findings—is inappropriate. Congress added the "de novo" language in 1986. Firearms Owners' Protection Act, Pub. L. No. 99-308, § 103, 100 Stat. 449, 453 (1986).[10] That

---

[8] *See, e.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 23 (1974) (defining "de novo proceeding" as requiring a determination "free from any claim that the Board's determination is supported by substantial evidence"); *United States v. First City Nat'l Bank of Hous.*, 386 U.S. 361, 368 (1967) (holding that "review de novo" means "an independent determination of the issues"); *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc) (holding that "de novo" review of an ERISA plan administrator's denial does not permit deference to the plan administrator's fact-findings).

[9] To be sure, the Supreme Court in *United States v. Raddatz* explained that "de novo determination" of a magistrate judge's decision "permit[ted] whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." 447 U.S. 667, 676 (1980). But that only means that a party is not necessarily entitled to a new "hearing"—the court must still provide "*de novo* review." *See United States v. Wilson*, 864 F.2d 1219, 1221–22 (5th Cir. 1989) (distinguishing *Raddatz* and remanding when the district court did not provide de novo review "unrestrained by the findings and conclusions of the magistrate" judge).

[10] Even the legislative history of the 1986 amendment confirms non-deferential review: "A sanction as damaging as barring a man from his profession should not be imposed without a full de novo hearing before an impartial judge." 99 Cong. Rec. S17003 (daily ed. June 24, 1985) (statement of

12

amendment was a legislative rejection of prior judicial decisions that Section 923(f)(3) does not require "trial anew of factual matters" absent "substantial doubt." *See Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980). Section 923(f)(3) must be read to give "real and substantial effect" to Congress's addition of "de novo." *Van Buren v. United States*, 593 U.S. 374, 393 (2021).

*Third*, *Loper Bright* further confirms that deference is inappropriate here. Deference to administrative agencies is appropriate only when Congress "delegates discretionary authority to an agency." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). After *Loper Bright*, courts "no longer accord such deference" to agencies absent legislative direction to do so. *See United Nat'l Foods, Inc. v. NLRB*, 138 F.4th 937, 946 (5th Cir. 2025). And when Congress wants courts to defer to agency fact-findings, it must say so. *See Urias-Orellana v. Bondi*, 146 S. Ct. 845, 851, 854 n.6 (2026) (holding that the "substantial evidence" standard applied to fact-findings because Congress "mandate[d]" "a deferential standard of review"). Congress did just the opposite in Section 923(f)(3): it unambiguously required "de novo" review.

The Fifth Circuit has never endorsed the ATF's deferential "substantial doubt" test or held that a "substantial evidence" standard applies to review of the ATF's fact-findings. In the two Fifth Circuit appeals that the ATF discusses, the petitioner-appellants did not challenge the ATF's findings that GCA-violating conduct occurred. *Fairmont Cash Mgmt.*, 858 F.3d 356, 362 (5th Cir. 2017) ("Cash Cow admits that its employees committed all of the violations of the Gun Control Act found by the ATF to have occurred."); *Crusader Gun Grp., L.L.C. v. James*, 118 F.4th 648, 654 n.2 (5th Cir. 2024) (noting that the petitioner only "dispute[d] some of the violations"). To be sure, *Fairmont Cash Management* cited *Stein's* and stated that "a court may give the ATF's

Senator Dole)). A "dealer whose license is revoked may obtain a trial de novo upon appeal to district court." *Id.*

13

determination as much weight as the court deems appropriate." 858 F.3d at 361. But, after *Loper Bright*, the only "appropriate" amount of "weight" to give the ATF's findings is none whatsoever. In any event, the Fifth Circuit has already held that allowing "reliance" (*e.g.*, weight) does not authorize deferential review of fact-findings. *See Wilson*, 864 F.2d at 1221–22.

This Court should not apply any deference to the ATF's findings. It should conduct de novo review as mandated by Congress. 18 U.S.C. § 923(f)(3). But even if this Court adopted the ATF's argument about the applicable standard of review, Harris's evidence demonstrates that "substantial doubt infects the agency's findings of fact," which precludes deference even under the ATF's argument. *Stein's*, 649 F.2d at 466. Either way, the Court should deny the ATF's motion.

## II. Summary judgment is improper because Harris has demonstrated genuine disputes of material fact as to whether he willfully violated the Gun Control Act.

The Court should deny the ATF's motion for summary judgment. Harris made an evidentiary showing sufficient to defeat summary judgment because his evidence supports a rational finding that he did not aid and abet Remley's and Koroly's unlicensed dealing or make any false statement in a Form 4473.[11] To sustain the ATF's decision, the ATF must show beyond any genuine dispute that Harris sold firearms to Remley and Koroly with knowledge that they intended to unlawfully resell them for profit. *See Rosemond v. United States*, 572 U.S. 65, 67 (2014) (requiring "advance knowledge"); *see also United States v. Fountain*, 277 F.3d 714, 717 (2001); *see also* AR564–567. The ATF has failed to do so.

---

[11] The ATF's motion for summary judgment contends that Harris aided and abetted "Remley and Koroly." (Dkt. #10 at 9). But the ATF's administrative decision was limited to "aiding and abetting Remley," (AR396:7–21), so the new argument as to aiding and abetting Koroly is an improper post hoc justification for the narrowly based revocation. *See infra* at 29. It also is factually impossible, because Koroly stopped selling firearms in September 2021, the month *before* Remley purchased the first of the 46 firearms at issue. (Ex. A at 82:4–19; ██████████████████ ███████████ In any event, Harris's evidence demonstrates that, as with Remley, there was no violation as to Koroly.

Harris's evidence from the revocation hearing, corroborated by other witnesses and documents, provides a sufficient basis for a rational trier of fact to conclude that he did not willfully violate the Gun Control Act. The ATF's key evidence—Remley's and Koroly's accusations—is disputed and unreliable. And the ATF's other evidentiary arguments provide it no help. Genuine disputes of material fact preclude summary judgment for the ATF.

### A.    Harris's testimonial and documentary evidence establishes that he did not violate the Gun Control Act.

Harris's evidence supports a rational finding that he never sold a firearm to Remley or Koroly with knowledge—or even reason to suspect—that it would be unlawfully resold.

*First*, during the hearing, Harris categorically denied that he ever sold firearms to Remley and Koroly with knowledge that they intended to resell them for profit. (AR460:6–462:8; AR484:7–11). ███████████████████

████████████████████████████████████

████████████████████████████ He denied the existence of any conspiracy to reduce his inventory. (AR484:7–11; AR420:19–421:15; AR385:21–386:14). ██

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████ Harris's testimony at the hearing genuinely disputes every "fact" advanced by the ATF in its summary-judgment motion.

*Second*, Harris provided documentary evidence to support his testimony. ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Third*, Harris presented evidence from two knowledgeable third parties to support his defense, including by establishing that Remley admitted actively concealing the firearm-reselling scheme from Harris. ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

Another witness, Slade Turner, submitted a declaration. (AR164–65). Turner is a federal firearms licensee who also has personal knowledge of Remley's conduct at gun shows. (AR164).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

16

██████████████████████████████████████████████

███████████████████████████████████████

Harris's "detailed and fact-intensive" evidence shows, through "specific facts," that Harris never sold a firearm with knowledge that it would be unlawfully resold. *See Luna v. Davis*, 59 F.4th 713, 716 (5th Cir. 2023) (quotation marks and citations omitted). Harris's evidentiary showing demonstrates that genuine disputes of material fact require denial of the ATF's motion, without regard to the unreliability of the ATF's evidence. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (forbidding "credibility determination[s]" at summary judgment).

**B.      The accusations of Remley and Koroly are unreliable and insufficient to support summary judgment to the ATF.**

The ATF's motion—like the underlying revocation decision—relies almost entirely on Remley's and Koroly's proffer-interview and guilty-plea accusations against Harris. (Dkt. #10 at 9–10). Their accusations are unreliable and otherwise insufficient to support summary judgment, which is an independent basis to deny the ATF's motion. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 81 (5th Cir. 1987).

**1.      The Court should draw an adverse inference based on Remley's and Koroly's Fifth Amendment invocations.**

Invoking their Fifth Amendment right against self-incrimination, Remley and Koroly refused to answer questions critically relevant to their reliability during their depositions. The Court should draw an adverse inference that Remley and Koroly lied to the ATF during their relevant proffer interviews and to the district court in their factual bases.

The Court may draw an adverse inference against the ATF (a party) because Remley and Koroly (the ATF's non-party witnesses) refused to answer questions on Fifth Amendment grounds.

17

*See F.D.I.C. v. Fidelity & Deposit Co. of Md.*, 45 F.3d 969, 977 (5th Cir. 1995).[12] Courts within the Fifth Circuit regularly draw adverse inferences against a party, or instruct the jury on adverse inferences, when a non-party witness invokes the Fifth Amendment. *See, e.g.*, *Chamberlain v. Dry Dock Bar & Grill, Inc.*, 2023 WL 4246069, at *6 (N.D. Miss. June 28, 2023) (denying summary judgment after "[a]pplying an adverse inference"); *Hassan v. City of Shreveport*, 2018 WL 3028951, at *6 (W.D. La. June 18, 2018) (allowing adverse-inference instruction); *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 2017 WL 3236110, at *15 (S.D. Tex. July 31, 2017) (denying post-trial motion on adverse-inference instruction); *In re Cowin*, 492 B.R. 858, 885 (Bankr. S.D. Tex. 2013) (drawing inference that non-party's "testimony would have been damaging" to the debtor-defendant). An adverse inference that Remley and Koroly lied to the ATF is appropriate here.

Koroly at first answered questions about the underlying events, but then he repeatedly invoked the Fifth Amendment when asked whether Remley and he colluded to falsely accuse Harris of misconduct. Most noteworthy is Koroly's invocation of the Fifth Amendment when asked: "Did you and Chris Remley discuss in April 2026 that Tom Harris, in fact, did not know that you were selling firearms without a license?" (Ex. A at 209:5–11). He also refused to answer other questions concerning collusion with Remley:

- When is the last time you spoke to Chris Remley?

- Did you and Chris Remley discuss in April 2026 the need to have a straight story during these depositions?

- Did you and Chris Remley discuss concern that your testimony during these depositions could open you up to additional criminal liability?

---

[12] To justify an adverse inference, there must be admissible corroborating evidence of the fact to be inferred. *F.D.I.C.*, 45 F.3d at 977–78. Harris's testimonial and documentary evidence corroborates the inference that Remley and Koroly lied about Harris's knowledge.

- Did Chris Remley pressure you during April 2026 to make sure that your deposition testimony was consistent with your testimony to the ATF?

- Does Chris Remley plan to lie during his deposition testimony on Friday?

- Was Chris Remley lying when he told the ATF that Tom Harris knew he was selling firearms for profit?

- Did Chris Remley and you agree that in offering deposition testimony this week, you would continue to testify that Tom Harris knew you were selling firearms without a license?

- Did Chris Remley tell you in April 2026 that he lied to the ATF during his proffer interviews?

- Did Chris Remley tell you in April 2026 not to talk about his deal to implicate Tom Harris in exchange for leniency from the federal government?

- Are you going to leave here and meet with Chris Remley?

(Ex. A at 16:24–17:7; Ex. A at 206:25–210:15). Koroly was willing to peddle the same lies he told in 2022 and 2023, but he refused to answer whether Remley and he manufactured those accusations. Because Koroly had already been convicted for his unlawful firearms-reselling scheme, there could be no reason to invoke his Fifth Amendment right unless he lied during those proceedings. For example, it is a federal crime to knowingly lie to an executive agency. 18 U.S.C. § 1001(a). The Court should adversely infer that Koroly's accusations against Harris are untrue.

Remley's deposition was far worse. Failing to substantiate his prior accusations against Harris, Remley invoked his right against self-incrimination *five hundred sixteen* (516) times. (Ex. B). He refused to answer basic background questions.[13] He refused to answer the key questions of whether he gave ████████████████████████

████████████████████████████████████

---

[13] (Ex. B at 10:24–26 (Q: "Do you know Tom Harris?" A: "Respectfully plead the Fifth."); *id.* at 19:13–15 (Q: "Did you partner with Lane Koroly in the buying and selling of firearms for profit?" A: "I plead the Fifth.")).

████████████████████ He refused to answer equally fundamental questions about whether the information he told the ATF during his October 2022 proffer interview was truthful. (*See* AR21).[14] He generally refused to respond to questions about Slade Turner's testimony, ████████████ ████████████████████████████.[15] He refused to answer questions about Corey Staub's testimony, including as to his admission ████████████████████████████████ ████████████████████████ He refused to answer how Harris "had full knowledge" that he was selling firearms. (Ex. B at 70:15–71:23). ████████████████

████████████████████████████████████[16]

████████████████████████████████████

████████████████████████

The Fifth Amendment invocations continue. ████████████████████

████████████████████████████████████

████████████████ He refused to answer whether he could confirm (as he purported to do in

---

[14] Among other questions, Remley refused to answer: ████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████

[15] He refused to answer: ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████

[16] For example, Remley refused to answer: "Did you ever agree with the ATF to make accusations against Tom Harris in exchange for anything?"; "Did ATF ever ask you if you would be willing to make accusations against Tom Harris"; "Did you ever think that if you cooperated against Tom Harris, you would receive a lighter punishment?"; "Did you make allegations against Tom Harris in hopes of receiving lighter punishment?" (Ex. B at 73:18–74:15).

his April 2023 proffer interview) ████████████████████████████████

██████████ ████████████████████████████████████████████████

████████████████████████████████████████████ He refused to answer

whether he purchased firearms "as seed inventory for [his] future FFL." (Ex. B at 117:17–121:3).

Remley occasionally provided a conclusory substantive answer, but immediately invoked the Fifth Amendment to any follow-up questions. (*See, e.g.*, Ex. B at 49:18–50:15; 62:24–64:18). The Court should ignore Remley's occasional conclusory interjections and infer that all of his accusations are false.[17] His refusal to meaningfully answer nearly every question demonstrates that his accusations are unreliable and should not be credited at summary judgment or ever.

Remley is the ATF's key witness. The ATF credulously accepted and deployed his false allegations to revoke Harris's federal firearms license after 27 years of business. Yet, Remley refused to answer nearly every single question during his deposition, strongly suggesting that honest answers would demonstrate that he lied to the ATF and the district court. *See* 18 U.S.C. § 1001(a). The Court should adversely infer that all of Remley's accusations are false. Given Remley's refusal to testify, it is not clear how the ATF could ever carry its burdens of proof and persuasion in an adversarial hearing. But one thing is clear: Remley's unreliable statements to the ATF, unsubstantiated at his deposition, are no basis to grant summary judgment to the ATF, even without regard for Harris's contrary evidence.

---

[17] *See, e.g.*, *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549 (5th Cir. 2012) (affirming denial of motion to withdraw Fifth Amendment assertion where the witness appeared to "attempt to abuse the system or gain an unfair advantage"); *United States v. 4003–4005 5th Ave.*, 55 F.3d 78, 84–85 (2d Cir. 1995) ("If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions.").

**2.      Remley's and Koroly's accusations are false and unreliable.**

Remley's and Koroly's allegations are demonstrably false, unreliable, or otherwise unsupportive of the ATF's motion. They certainly do not compel a fact-finder to rule in the ATF's favor that Harris willfully violated the Gun Control Act, even in the absence of Harris's primary evidence disputing their accusations. *Koerner*, 910 F.3d at 227.

████████████████████████████████████████████████████████

████████████████████████████ There is zero evidence of any such conspiracy other than Remley's statements to the ATF. In fact, ██████████████████████████████████████

█████████████████████████████████████████ ████████████████████

█████████████████████████████████████████████████████████

████████████████ consistent with the seller-friendly market in 2021. A reasonable fact-finder could conclude that there was no such conspiracy and that Remley's central narrative is untrue.

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

22

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ Koroly ████

acknowledged that the ATF finds those reports suspicious. (Ex. A at 169:19–24; ████████ It is

not plausible that Harris (a 27-year veteran of the industry) participated in this alleged course of

conduct and brazenly submitted suspicion-raising reports to ATF without regard for the

consequences, just to make extra money in 2021 when firearms sales were already at record highs.

*Fourth*, Koroly's accusations are similarly unreliable. ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ For one, Koroly claimed that Harris

"coached" him on what to say to the ATF. (AR19 ¶ 7; Ex. D at 35:35–36:37; Ex. A at 40:21–41:2).

███████████████████████████████████████████████████████

████████████████████.[18] ███████████████████████████████

███████████████████████████████████████████ But, at his

deposition, Koroly could not recall whether Harris actually asked "what are firearms going for" at

---

[18] Koroly told the ATF agents: █████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████

other dealers, after Koroly told him "that his prices were too low." (Ex. A at 93:24–95:6). Finally, in a speculative theory not even referenced in the ATF's documents, Koroly claimed at his deposition that he "think[s]" Harris knew because Harris stocked "more Glocks on the shelf" over time. (Ex. A at 70:12–18; 244:4–7). But there is nothing illegitimate about sourcing firearms that are in high demand, or with sourcing firearms in bulk quantities, or about having an inventory that fluctuates over time. The Court must view Koroly's testimony "in the light most favorable to" Harris. *Waste Mgmt. of La.*, 920 F.3d at 964. Koroly's perceptions do not support that Harris had knowledge of Koroly's unlicensed dealing.

*Fifth*, Remley's and Koroly's guilty-plea factual bases do not support the ATF. (AR14–17). Having already lied to the ATF, Remley and Koroly naturally maintained their story when pleading guilty. Koroly acknowledged that he simply reviewed and signed his factual basis, (Ex. A at 120:17–121:2; 189:21–190:5), which was almost certainly drafted by the federal prosecutor. Remley refused to answer nearly every question about his factual basis. (Ex. B at 67:6–71:16).

*Sixth*, ███████████████████████████████████████████

████████████████████████████████████████████████████

██████.[19] ███████████████████████████████████████████

██████. Remley invoked the Fifth Amendment to all questions concerning his cooperation-based and financial motives to lie to the government. (*See* Ex. B at 73:3–74:23, 58:5–59:14). Koroly admitted he was trying to cooperate with the government, including in an effort to receive a substantial-assistance variance. (Ex. A at 117:20–25, 191:9–13, 196:12–201:11). And, again, this Court should make an adverse inference that Remley and Koroly colluded to falsely accuse Harris.

---

[19] █████████████████████████████████████████████████

████████████████████████████████████████████████

*Supra* at 17–21. Remley and Koroly faced severe potential criminal liability, such as for █████████ ████████████████████████████ and internationally (Ex. A at 55:8–20). It is reasonable to infer that they were doing whatever they could to avoid maximum prosecution and punishment, including by falsely accusing Harris of misconduct.

Remley's and Koroly's allegations, which are the ATF's only material evidence, are not reliable. That unreliability alone is enough to deny the ATF's motion for summary judgment. *Lodge Hall Music*, 831 F.3d at 81. The ATF's evidence does not support—much less compel—a finding that Harris sold firearms to Remley or Koroly with knowledge that they would be unlawfully resold. The Court should deny the ATF's motion.

### C.    The ATF's evidence is genuinely disputed, immaterial, or both.

The ATF's motion for summary judgment relies on evidence that is genuinely disputed, immaterial to the issues before this Court, or both. The ATF makes no effort to construe the evidence "in the light most favorable to" Harris. *See Waste Mgmt. of La.*, 920 F.3d at 964. The ATF has not demonstrated that it is entitled to summary judgment as a matter of law.

*First*, the ATF's motion largely repeats Remley's and Koroly's allegation that Harris knew they were reselling firearms. (Dkt. #10 at 9–10). It also argues that Remley and Koroly had no "incentive to lie to the ATF" or to their sentencing courts. (*Id.* at 10–11). Harris has already demonstrated that their accusations are genuinely disputed and otherwise unreliable. *Supra* at 15–25. Harris has also already demonstrated that Remley and Koroly did lie, and had reason to do it. *Supra* at 24–25. There is no other explanation for why they invoked the Fifth Amendment during their depositions, including in response to questions concerning their collusion against Harris.

*Second*, the ATF attempts to argue that the mere existence of Remley's Forms 4473 supports their arguments. (Dkt. #10 at 11). But the existence of those forms is not dispositive of anything other than Harris's meticulous compliance with the ATF's recordkeeping requirements.

25

Harris does not deny that he sold the 46 relevant firearms to Remley; rather, Harris explains that Remley provided legitimate reasons for those purchases, and Harris never knew Remley was reselling firearms. *Supra* at 15. The ATF also contends that Remley must be telling the truth because, in his April 2023 proffer, Remley "distinguish[ed] between the firearms he sold for profit and those he kept for his personal use." (Dkt. #10 at 11; AR24–27). But there are several obvious reasons why Remley did so: He *did* purchase those firearms (and others) for personal use; he did not sell all firearms he purchased from Harris; he wanted his story to be believable; and he wanted to minimize his criminal liability. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████ The Court should infer that he lied.

**Third**, the ATF argues incorrectly that Harris "conceded" that he had an inventory issue in 2021. (Dkt. #10 at 11–12 (quoting AR331–32)). ████████████████████

█████████████████████████████████████████ ███████████

██████████████████████████████████████████████████

████████████ Harris's testimony does not, as the ATF suggests, support that he had a *problem* with his inventory in 2021. ████████████████████████████████████

██████████████████████████████████████

**Fourth**, the ATF attempts to undermine Harris's explanation that he sold 16 of the 46 firearms to Remley as "seed inventory." (Dkt. #10 at 12–14).[20] Its arguments are meritless.

The ATF begins by arguing that Harris's seed-inventory sales were unlawful because "one must have an FFL to engage in the business of dealing in firearms," and Remley had no FFL at the

---

[20] The ATF incorrectly asserts that Harris claimed all 46 firearms were seed inventory. (Dkt. #10 at 5, 12–14). That is wrong: ████████████████████████████████████████ ███████████████████████████████████████████████

time. (*Id.* at 12). But the statutory definition of being "engaged in the business" requires both "the repetitive purchase *and resale* of firearms." 18 U.S.C. § 921(a)(21)(C) (emphasis added); *see Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 737 F. Supp. 3d 426, 441 (N.D. Tex. 2024) (enjoining the ATF's 2024 "Engaged in the Business" Final Rule because the Gun Control Act has "a conjunctive requirement" of "purchase *and* resale").[21] Further, the ATF's regulations would have permitted Remley to sell firearms that he purchased in his personal capacity. *See* 27 C.F.R. § 478.125a.

Next, the ATF tries to discredit that those purchased were, in fact, for seed inventory. (Dkt. #10 at 13). It emphasizes Harris's testimony that, when he started his business in 1994, he started acquiring firearms only after he obtained his FFL. (*Id.*). But Harris's backstory is entirely irrelevant to whether Harris violated the Gun Control Act by selling seed inventory. As the ATF acknowledges, Harris knew that "Remley and Koroly had applied for an FFL." (*Id.* at 12). ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ And Remley's and Koroly's seeking an FFL does not imply that they were already selling firearms— starting an FFL is a logical outgrowth of their existing, lawful ammunition business.

The ATF resorts to labeling Harris's seed-inventory theory "absurd[]," based solely on the fact that Remley and Koroly paid Harris's "retail price" and "sales tax." (Dkt. #10 at 13). But firearm prices were very strong at the time, and Harris had some of the best prices available.[22]

---

[21] The ATF recently published a Notice of Proposed Rulemaking to revise the 2024 Final Rule that was "replete with procedural and substantive problems." *Revising Regulations Defining "Engaged in the Business" as a Dealer in Firearms*, 91 Fed. Reg. 24424 (May 6, 2026). The NPRM concedes that "repetitive sales with the intent to profit" are required. *Id.* at 24426.

[22] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Because his prices were very competitive, that Remley was willing to pay Harris's retail price and sales tax for the seed inventory firearms does not suggest that Harris could not credit what he was told by Remley.[23] ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

The ATF also argues that Harris cannot have sold "seed inventory" because Harris never witnessed Remley "storing" those firearms in the room he rented to Remley and Koroly. (Dkt #10 at 13). That argument fails for multiple reasons. ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ Further, ATF recordkeeping regulations generally required firearms to leave the Sporting Arms Company premises after the firearm's disposition date. *See* 27 C.F.R. § 478.125(e).

\* \* \*

The ATF has not demonstrated that it is entitled to summary judgment. It has not established, beyond genuine dispute, that Harris sold firearms to Remley or Koroly with knowledge that those firearms would be unlawfully resold. As a result, the ATF has not demonstrated that Harris willfully aided-and-abetted Remley's or Koroly's unlicensed dealing or willfully made any false statements in a Form 4473.

---

████████████████████████████████ ; Ex. A at 89:12–15 (Koroly testifying that "firearms prices" were "inflated" at the time and that firearms were "in higher demand").

[23] ███████████████████████████████████████████████████████ ███████████████████████████████████████████

**III.    The ATF's alternative post-hoc justification is procedurally improper and substantively wrong.**

As a last alternative, the ATF pivots to a new theory. (Dkt. #10 at 13–14). According to the ATF's motion for summary judgment, Harris necessarily made a false statement by certifying Forms 4473 for the 16 seed-inventory firearms because he "knew these firearms were being purchased for future sales." (*Id.*). This argument is procedurally improper and substantively wrong.

The ATF's alternative theory is procedurally improper. It is well-settled that a federal agency cannot defend its administrative actions, including adjudicative decisions, "with post hoc justifications." *Thryv, Inc. v. NLRB*, 102 F.4th 727, 745 (5th Cir. 2024) (forbidding NLRB from using appeal "as an opportunity to supply the evidentiary basis that was missing from its order"); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23–24 (2020). Instead, the ATF must rely on what the relevant decision "said, not what it might have said." *Thryv*, 102 F.4th at 745 (citation omitted). Further, "the fact that an agency provided a *post hoc* rationalization is relevant evidence that the action is arbitrary and capricious." *Data Mktg. P'ship v. U.S. Dep't of Labor*, 45 F.4th 846, 856 (5th Cir. 2022).

The ATF's underlying decision did not rely on the ground that seed-inventory sales necessarily entail false statements. (*See* AR564–567). Instead, the ATF found that Harris's claim to have sold firearms as seed inventory was untrue. (*Id.* at 567 ¶ 15). The ATF cannot rely on its new theory. *Thryv*, 102 F.4th at 745. And the very fact that the ATF attempts a post hoc justification demonstrates that its decision was unlawful. *Data Mktg. P'ship*, 45 F.4th at 856.

Regardless, the ATF's new argument is wrong. The question on the Form 4473 concerning "actual transferee[s]" targets straw purchasers—not future federal firearms licensees. *See* Form 4473, Section B, Question 21.a; *see also* Form 4473, Notices, Instructions, and Definitions. As explained above, nothing in the Gun Control Act prohibits an individual like Remley from

purchasing firearms that he intends to repetitively resell only once he acquires a federal firearms license. *See supra* at 27. And the ATF cites no authority—*e.g.*, caselaw, regulations, guidance, etc.—to suggest that Harris's certification of the seed-inventory forms was a false statement. This argument by no means supports the ATF's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should deny the ATF's motion for summary judgment and set this case for an evidentiary hearing at the earliest possible time.


Dated:  May 15, 2026                                Respectfully submitted,


/s/ *Brian M. Gillett*                              /s/ *James W. Porter, III*
Brian M. Gillett                                    James W. Porter, III
   Texas Bar No. 24069785                 *Admitted Pro Hac Vice*
BRADLEY ARANT BOULT CUMMINGS LLP                       Alabama Bar No. 1704J66P
Fountain Place                                      W. Chadwick Lamar, Jr.
1445 Ross Avenue, Suite 3600                           *Admitted Pro Hac Vice*
Dallas, TX 75202                                       Alabama Bar No. 4176M12Z
Phone: (214) 257-8700                               BRADLEY ARANT BOULT CUMMINGS LLP
Facsimile: (214) 939-8787                           1819 Fifth Avenue N.
bgillett@bradley.com                                Birmingham, AL 35203
                                                    Phone: (205) 521-8000
                                                    Facsimile: (205) 521-8800
                                                    jporter@bradley.com
                                                    clamar@bradley.com

*Counsel for Petitioner Thomas Roy Harris, Jr.,*
*doing business as Sporting Arms Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 15, 2026, the foregoing was served via electronic delivery through the CM/ECF system, which will forward copies to all counsel of record.

*/s/ Brian M. Gillett*
*Counsel for Petitioner*

31