**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| THOMAS ROY HARRIS, JR., doing business as Sporting Arms Company,<br><br><br>Petitioner,<br>vs.<br><br>KRISSY Y. CARLSON, in her official capacity as Director of Industry Operations, Dallas Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives,<br><br>Respondent. | No. 4:24-cv-00737-SDJ |

**RESPONDENT'S REPLY TO PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT**

Fundamentally, the issue this Court must resolve is whether Respondent was authorized to revoke Petitioner's FFL.  In other words, "[t]he language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in its own judgment, but whether *all of the evidence presented* is sufficient to justify the Attorney General's revocation of the license." *Pinion Enters., Inc. v. ATF*, 371 F. Supp. 2d 1311, 1314–15 (N.D. Ala. 2005) (emphasis added). To do so, the Court must evaluate whether Petitioner willfully violated any provision of the Gun Control Act of 1968, as amended, 18 U.S.C. Chapter 44 and its implementing regulations found at 27 C.F.R. Part 478 (collectively, "GCA").

Additional discovery in this case has further cemented that Petitioner knew that both Mr. Remley and Mr. Koroly were purchasing firearms from him and then subsequently reselling them without an FFL.  In an attempt to impugn their credibility, Petitioner asserts that, ███████ ████████████████████████████████████████████████ ████████████████████████████████████ As explained below, this

1

argument misses the mark.   Petitioner also requests this Court to make a sweeping adverse inference against Respondent due to unrelated and adverse, non-party witnesses' invocation of their Fifth Amendment rights at their depositions.  As a matter of policy, this request erodes the parity between the parties in civil-adversarial proceedings. More specifically to this case, determining the appropriate adverse inferences with any degree of precision is largely not possible.

██████████████████████████████████████████████████████████████

██████████████████████████████████████. Accordingly, the Court need not resolve any standard of review dispute because ██████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

### 1.  Petitioner incorrectly frames the scope of the violations at issue.

As a threshold matter, Petitioner misapprehends the scope of the violations at issue in the underlying revocation proceeding.  Buried in a footnote on page fourteen of Petitioner's Response to Respondent's Motion for Summary Judgment ("Response"), Petitioner asserts that "the ATF's administrative decision was limited to 'aiding and abetting [Mr.] Remley[.]'" ECF No. 37 at 14 n. 11.   From there, Petitioner frames the evidence in this case as essentially a credibility battle between Petitioner and only Mr. Remley.  *See id*. at 1.  Petitioner is mistaken.

Neither the ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

Moreover, this Court is not limited to only the evidence before the Hearing Officer. Instead, the Court "may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2)." 18 U.S.C. § 923(f)(3).

**2.     Mr. Remley and Mr. Koroly's statements are largely consistent and credible.**

Boiled down to its essence, Petitioner's argument is essentially that Mr. Remley and Mr. Koroly's statements are not credible. ██████████████████████████████████ ████████████████████████████████████ *See* ECF No. 37 at 3. According to Petitioner, Mr. Remley's statements are full of impossibilities and material inconsistencies. *See id*. And all of their statements are otherwise false, unreliable, and a result of their "collusion" against Petitioner. *See* ECF No. 37 at 3, 10, 18, 22, 24- 25. These assertions miss the mark.

*A. Petitioner oversells any purported material inconsistencies and then underdelivers on actual examples of material inconsistencies.*

Petitioner alleges that Mr. Remley's various statements are "full" of material inconsistencies. *See* ECF No. 38 at 3. Outside of that bald assertion, Petitioner's response fails to demonstrate how Mr. Remley's statements are "full" of material inconsistencies. ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

More fundamentally, there will almost always be inconsistent statements when a witness gives multiple interviews on the same granular details over the course of many years. ████████

████████████████████████████████████

3

███████████████████████████████████████████████ Mr. Remley provided

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ He also was deposed and testified briefly at his guilty plea.

████████████████████████████████████████████████████

████████████████████████████ He also provided brief testimony at his

guilty plea and was deposed for several hours. Inconsistencies between statements are inevitable

when witnesses ███████████████████████████████ about events that

occurred years in the past.

> B. *After retaining counsel, Mr. Remley and Mr. Koroly's statements are largely consistent and tend to corroborate one another on key points.*

Petitioner glosses over a critical line of demarcation in this case: The statements Mr.

Remley and Mr. Koroly gave *before and after* they retained counsel. When critically evaluating

their statements *after* they retained counsel, their statements are largely consistent and tend to

corroborate one another. Petitioner simply glosses over this distinction.

After each retained counsel,[1] ███████████████████████████

████████████████████████████████████████████████ . *See generally*

Texas Disciplinary Rule of Professional Conduct 3.03(a)(5). ███████████████████

████████████████████████████████████████████████ . What emerges

------

[1] In fact, the ATF not only encouraged ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

4

once this line separates ████████████████████████████

████████████████████████████████████████████████

Based upon the audio recordings, ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████

██████████████████████████████████████████████
████████████████████████

Petitioner rests much of his attack on Mr. Koroly and Mr. Remley's credibility on an alleged

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

Under this theory, one would expect both Mr. Remley and Mr. Koroly ██████████████

██████████████████████████████████████████ This simply did

not happen.

In fact, the opposite is true: ██████████████████████████

██████████████████████ instead, ██████████████████████

██████████████████████████████

---

[2] During the beginning of the interview, ██████████████████

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████



In ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

Under Petitioner's collusion theory, ████████████████████████████

████████████████████ Instead, ████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████

██████████████████████████████████████████████████

████████████████ Again, █████████████████████████████

██████████████████████████████████████████████████

6



In sum, under Petitioner's theory—one would expect Mr. Remley and Mr. Koroly to come into their respective ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. If anything, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮Accordingly, Petitioner's "collusion" theory simply falls flat.

7

*D.  Mr. Remley and Mr. Koroly's respective statements are consistent on several key facts.*

In late 2020, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

8

████████████████████████████████████████████

████████████████████████████████

Contrary to Petitioner's assertion, both Mr. Remley and Mr. Koroly ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Furthermore, both Mr. Remley and Mr. Koroly ████████████████████

████████████████████████████████████████████

██████████████████████████████████

Finally, after ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

In sum, ████████████████████████████████ Petitioner knew

they were purchasing firearms from him and then reselling them without an FFL.

   E.   *Mr. Koroly's deposition revealed compelling evidence that Petitioner knew Mr. Koroly and Mr. Remley were reselling firearms they purchased from Petitioner.*

When asked for the first time at his deposition, Mr. Koroly testified that he had conversations with Mr. Remley and other individuals about buying and reselling Petitioner's guns—within earshot of Petitioner.  Ex. F at  211-17, 235.

In the summer of 2021, Mr. Koroly, with others, went to Petitioner's home-office to purchase firearms to then resell at venues within DFW.  *Id*. at 211-17. Petitioner's home-office was relatively cramped—an approximately 15 foot-by-15-foot office with a computer, desk, chair, as well as firearms and ammunition. *Id*. at 213-15; *see also* CAR at 128. While customers were in his home-office, Petitioner sat in a chair at his desk and almost never left his home-office. *Id*. at 215, 236-37. In that cramped setting, Mr. Koroly, whoever accompanied him, typically Mr. Remley, and Petitioner engaged in conversations with one another on a myriad of topics—including firearms. *Id*. at 236-37.  Additionally, in that same home-office, Mr. Koroly, and whoever had accompanied him, discussed the purchase and resale of Petitioner's firearms—at a normal, conversational decibel level. *Id*. at 214-16, 236-37. These conversations occurred within mere feet of Petitioner. *Id*. at 237. During these conversations discussing their subsequent resale of firearms, Petitioner was not otherwise distracted, e.g., he was not on the phone, listening to music, etc., nor does Petitioner have a hearing impairment.  *Id*. at 237-38.

Given that Petitioner was in very close proximity to these men, and also frequently spoke to them, it is completely implausible that Petitioner did not hear these conversations between Mr. Koroly and others regarding the resale of firearms they were purchasing from Petitioner. █████

██████████████████████████████████████

Petitioner's Response is notably silent on Mr. Koroly's testimony on these facts.

10

 There is no other explanation for

this inquiry, which establishes Petitioner's knowledge.

### 3. Drawing an adverse inference against Respondent is largely not possible and will erode the parity of similarly-situated parties in adversarial, civil proceedings.

The Fifth Circuit "'does not forbid adverse inferences against parties to a civil action when they refuse to testify in response to probative evidence offered against them.'" *Pyles v. Johnson*, 136 F. 3d 986, 997 (5th Cir. 1998) (quoting *FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 977 (5th Cir.1995)). The same is true when a non-party witness invokes the privilege in a civil case. *See id*. (citing *FDIC*, 45 F.3d at 977)).

" . . . [T]he fact that the Fifth Amendment does not *prohibit* such inferences does not imply that the fact-finder is *required* to make them." *Pyles*, 136 F.3d at 997. (emphasis in original). Instead, courts must evaluate on a case-by-case basis whether an adverse inference should be drawn against a party due to a non-party witness's assertion of his Fifth Amendment rights. *FDIC*, 45 F.3d at 978.

Furthermore, a court cannot decide an issue against a party solely because of a witness's invocation of the Fifth Amendment; instead, a court may so decide only when there is independent evidence in addition to the invocation. *Compare Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 Fed. Appx. 444, 446 (5th Cir. 2013) (reasoning that district courts have been uniform in holding that "an adverse inference can only be drawn when independent evidence exists of the fact to which

the party refuses to answers.") (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000))), *with State Farm Life Ins. Co. Gutterman*, 896 F. 2d 116, 119 n.3 (5th Cir. 1990) (noting that two district courts "declined to draw the inference at all where the party relying on the inference provided no independent evidence to support it."), *and Sec. & Exch. Comm'n v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2016 WL 4196667, at *8 n. 6 (E.D. Tex. Aug. 9, 2016) ("A court cannot decide an issue against a party solely on the basis of the party's invocation of the Fifth Amendment." (citing *Gulf Coast Bank & Tr. Co. v. Stinson*, No. 2:11-CV-88-KS-MTP, 2013 WL 30136, at 4*-*4, n. 2 (S.D. Miss. Jan. 2, 2013))).

With respect to each answer, "[t]he assertion of the [Fifth Amendment] privilege, particularly on the advice of counsel, is an ambiguous response." *Gutterman*, 896 F.2d at 119 (quoting *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210-11 (5th Cir. 1983)). Similarly, " . . . attenuated adverse inferences drawn from vague deposition questions are insufficient to establish a genuine issue of material fact." *Hassan v. Shaw*, 761 Fed. Appx. 429, 433 (5th Cir. 2019) (citing *Gutterman*, 896 F.2d at 119); *see also United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979) ("[W]e accept the proposition that [rendering] summary judgment merely because of the invocation of the [F]ifth [A]mendment would unduly penalize the employment of the privilege.").

In sum, the adverse inference drawn from the assertion of the Fifth Amendment does not replace the burden that needs to be met in order to survive summary judgment. *See Gutterman*, 896 F.2d at 119 (citing *Avirgan v. Hull*, 691 F. Supp. 1357 (S.D. Fla. 1988) (finding the adverse inference from a party's refusal to answer insufficient to create an issue of material fact to defeat summary judgment); *see also Curtis v. M&S Petroleum*, Inc., 174 F.3d 661, 675 (5th Cir. 1999) (holding that the adverse inference from a party's refusal to answer questions was not enough to create an issue of fact to avoid summary judgment).

Petitioner requests the Court to adversely infer that adverse and unrelated nonparty witnesses "lied" to Respondent and the Court—this sweeping request lacks necessary precision.

First, Petitioner's primary contention regarding Mr. Koroly and Mr. Remley's rationale for asserting their Fifth Amendment rights is based upon an inaccurate assumption. Petitioner asserts that "because Koroly had already been convicted  . . . there could be no reason to invoke his Fifth Amendment right unless he had lied during those proceedings."  ECF No. 37 at 19.  And Mr. Remley's invocation of his Fifth Amendment right "strongly suggest[s] that honest answers would demonstrate that he lied to the ATF and the district court."  ECF No. 37 at 21. These assertions assume neither individual faced any other criminal exposure other than alleged lies to Respondent and the Court—this is a shoddy assumption.

Their 2021 criminal acts spanned the Northern District of Texas and the Eastern District of Texas.  Accordingly, both still could face potential prosecution in the Northern District of Texas. Furthermore, their facilitation of transactions involving the proceeds of criminal activity may have run afoul of Texas criminal law.  *See, e.g.*, Tex. Penal Code Ann. § 34.02(a)(2). Finally, Mr. Remley and Mr. Koroly may not have reported their ill-gotten profits on their respective federal tax returns for tax year 2021; accordingly, they would have criminal exposure for potential, willful tax omissions.  *See*, e.g.,  26 U.S.C. § 7201 (Tax Evasion); 26 U.S.C. § 7203 (Willful Failure to Supply Information).  In sum, both deponents had numerous reasons for asserting their Fifth Amendment rights.  Accordingly, Petitioner's contention that is simply based upon an incomplete and faulty assumption.

Second, some of Petitioner's questions at the respective depositions were vague, and therefore, now require the Court to tease out attenuated inferences.  *See Hassan*, 761 Fed. Appx. at 433.  For example, among other open-ended questions asked at the depositions, Petitioner asked

13

the following open-ended questions: "When is the last time you spoke to Chris Remley?"; "Does Chris Remley plan to lie during his deposition testimony on Friday?" "How did Mr. Harris know you were reselling firearms for profit?" "On what basis did Mr. Harris know of your intentions?" ECF No. 37 at 18-20, n.14.   These are just a sampling of Petitioner's questions that oscillated between open-ended and close-ended questions.[3]   As a result, these questions invited narrative responses that point to countless factual scenarios.

Take for example the following question, "Does Chris Remley plan to lie during his deposition on Friday?" *Id*. at 19. There are numerous probable-responsive answers to this question: "I have no idea." "I have not spoken to him." "I have not spoken to him about the deposition."  "I did not ask."  "I asked but I could not hear his answer." "I don't remember."  Even if the answer was "Yes." The natural follow-up question is some form of: "What does he plan to lie about?" Instead of that question, Petitioner then asked, "Is Chris Remley still selling firearms for profit?" *Id*. at 207.   Because of these questions, the Court is left to make attenuated inferences.  These inferences are simply "insufficient to establish a genuine issue of material fact." *Hassan*, 761 Fed. Appx. at 433.

Third, in the Fifth Circuit, the assertion of the Fifth Amendment on the advice of counsel is an ambiguous response. *See Gutterman*, 896 F.2d at 119.  This is precisely the case here.  To Petitioner's second question, Mr. Remley stated, "On advice of my counsel, I invoke my Fifth." Ex. G at 6.  He repeated the same answer to the next question.  Ex. G at 6.  Following that, Mr. Remley largely used a short-hand answer to assert his Fifth Amendment rights.  Mr. Koroly was

---

[3] *See generally* Paul Lisnek & Michael Kaufman, <u>Depositions: Procedure, Strategy, & Technique</u>, § 7:7. (2026) ("The examiner has available to him or her: general, open-ended questions that elicit narrative answers, close-ended questions that clarify and probe, and leading questions which suggest their own answer and help guide the direction of the interaction, or any combination of these forms.").

not as precise, but like Mr. Remley, Mr. Koroly was represented by counsel at the deposition. Ex. F at 2. And at the deposition, he asserted his Fifth Amendment rights to various questions.

This invocation is ambiguous for two reasons. First, in the aggregate, this answer is obviously ambiguous because it completely shields the fact-finder from the underlying facts. As a result, the fact-finder must speculate as to the witness's answer, i.e., inferring the underlying facts. Secondly, the response is ambiguous because "[a]n attorney might advise her or his client not to answer questions simply as a safety measure lest the client disclose information that she or her may not even know to be criminal." *Farace*, 699 F. 2d at 211. This is exactly the case here Mr. Koroly[4] and Mr. Remley's expansive criminal exposure. As a result, Petitioner requests the Court to guess which rationale the deponents had for invoking: e.g., tax crimes; money-laundering crimes; gun-trafficking crimes in the Northern District; or Petitioner's theory, and then apply that rationale to every statement they made to the ATF and the Court to draw adverse inferences.

Fourth, Petitioner paints with too broad a brush. In his Response, Petitioner requests the Court to "draw an adverse inference that Remley and Koroly lied ███████████████████ ████████████ and to the district court in their factual bases." ECF No. 37 at 17. This begs the question: ████████████████████████████████████████

---

[4] Take for example the question Petitioner asserts is "[m]ost noteworthy . . . 'Did you and Chris Remley discuss in April 2026 that Tom Harris, in fact, did not know that you were selling firearms without a license?" ECF No. 37 at 18. Given Mr. Koroly's wide criminal exposure, an answer to this question could provide a possible evidentiary link to crimes in the Northern District of Texas, Texas state crimes, or federal tax crimes.

Moreover, this is not technically a single-fact, leading question that suggests only a yes or no answer; it is a probing, close-ended question. *See* Paul Lisnek & Michael Kaufman, Depositions: Procedure, Strategy, & Technique, § 7:7. (2026). Moreover, a "Yes" to this question does not mean Mr. Koroly agreed with the underlying premise. Instead, a "Yes" could mean: "Yes, at the very beginning Petitioner did not know I resold a gun I purchased from him. But soon after, he did know because we talked about it." or "Yes, we had the conversation that *Petitioner believes* he did not know, but *we know*, that *he knew* we were selling firearms." Instead, Petitioner's questions failed to establish, on a fact-by-fact basis, the specific facts necessary to draw an adverse inference. In short, these largely open-ended or vague questions lacked the necessary organization and granularity to allow the Court to draw a precise adverse inference.

15

Based upon the Response, it is unclear what exactly Petitioner requests the Court to infer. For example, Mr. Remley ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████  Alternatively, the Response might have requested the Court to undertake a similar exercise, ████████████████████████████████████████████

████████████████████████████  and count that against Respondent for the purposes of summary judgment.  Under either scenario, precedent also requires these alleged lies to be corroborated with independent evidence from the record.  *See, e.g., Joe Hand Promotions, Inc.*, 544 Fed. Appx. at 446 (5th Cir.  2013); *Gutterman*, 896 F. 2d at 119 n. 3; *Sethi Petroleum, LLC*, No. 4:15-CV-338, 2016 WL 4196667, at *8 n. 6; *see also Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir.1992) (discussing that it is not the court's function to search the record on non-movant's behalf for evidence which may raise a fact issue). Either way, Petitioner's request is too broad.

Finally, Petitioner's request highlights the policy problem that arises in this and similar cases—drawing an adverse inference against a party, due to an unrelated, adverse non-party witness's Fifth Amendment assertion, undermines the parity between the parties in adversarial, civil proceedings.  This is not a case where Petitioner deposed witnesses who are agents, employees, or contractors about matters within the scope of their work with Respondent.  *See FDIC*, 45 F. 3d at 978 (analyzing policy concerns regarding employee and former employee, non-party witnesses invoking their Fifth Amendment rights in civil proceedings).  In these situations, there would be less danger that these witnesses would assert their Fifth Amendment privilege in bad faith, i.e., asserting the privilege solely to discredit their employer.

Here, Mr. Koroly and Mr. Remley are, and have been, *adverse* to Respondent. In this situation, there is always a danger that an unassociated, adverse non-party witness could assert the privilege solely to discredit the party that they are in fact "adverse" to, i.e., out of spite. *Cf. LiButti v. U.S.*, 107 F.3d 110, 123 (2d. Cir. 1997) ("The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship."). Moreover, given the wide scope of their potentially expansive criminal exposure, this is not a situation that Respondent can simply cure via an immunity agreement. *See United States v. Kellogg Brown & Root, Inc.*, 1:04-cv-42, 2015 WL 13906222 (E.D. Tex. Jun. 13, 2015) ("Furthermore, this is not a typical civil case where the litigants have no ability to grant immunity to a third-party witness and thus avoid his invocation of his rights.").

Accordingly, in scenarios like this case, the party requesting the adverse inference gets a windfall while the other party—through no fault of their own—draws the short straw. This result erodes the parity between the parties in an adversarial proceeding. *See, e.g.*, *LiButti*, 107 F.3d at 123 (reasoning that "evolving case law and its underlying rationale" suggest a number of non-exclusive factors guiding courts in making these determinations: 1.) Nature of the relevant relationship (most significant); 2.) Degree of control over the non-party witness; 3.) Compatibility of interests in the outcome of litigation; and 4.) Non-party witness's role in litigation).

In sum, the adverse inference against Respondent is simply inappropriate here.

**4. Outside of Mr. Remley and Mr. Koroly's statements, the Certified Administrative Records contains evidence supporting that Petitioner willfully violated the GCA.**

The increase in firearm volume at Petitioner's business establishes the scale of Petitioner's involvement with Mr. Remley and Mr. Koroly. ██████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

17

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ It is unreasonable for Petitioner to believe these were all for personal use.

Additionally, Petitioner's financial records compound the volume picture. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ His synopsis conveniently omits this evidence.

Additionally, Petitioner's own records contradict his own timeline. █████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

Given this, the Court need not hold an evidentiary hearing. While Petitioner has attacked Mr. Remley and Mr. Koroly's credibility, █████████████████████████████████████

█████████████████████████████████████████████████████ In

18

short, ████████████████████████████████████████████████████

████████████████████████████████ *See Fairmont Cash Management, L.L.C. v. James*,

858 F.3d 356, 362, 364 (5th Cir. 2017) (" . . .the court is 'not required to hold an evidentiary

hearing and may enter judgment solely based upon the administrative record.'") (citation omitted).

Discovery has simply provided further evidence of Petitioner's knowledge and willfulness. And

while credibility determinations between witnesses are improper at this stage, the Court can still

grant summary judgment where a dispositive pattern is evident in the record. *Waste Mgmt. of La.,*

*L.L.C. v. River Birch, Inc.*, 920 F.3d 958 (5th Cir. 2019); *Heinsohn v. Carabin & Shaw, P.C.*, 832

F.3d 224 (5th Cir. 2016).

### 5.  Respondent has not advanced a post-hoc justification.

Petitioner argues that Respondent's motion advances a new legal theory: That the seed-

inventory firearms supported the revocation because Petitioner "knew these firearms were being

purchased for future sales," and then frames this as an impermissible post-hoc justification under

*Thryv, Inc. v. NLRB*, 102 F.4th 727, 745 (5th Cir. 2024), *Dep't of Homeland Sec. v. Regents of the*

*Univ. of Cal.*, 591 U.S. 1, 23–24 (2020), and *Data Mktg. P'ship v. U.S. Dep't of Lab.*, 45 F.4th 846,

856 (5th Cir. 2022). The argument misapprehends the Final Notice and seed-inventory analysis.

Petitioner cries foul regarding a theory *he* ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████. *Id*. Simply put, this is not a new theory. More problematically, in raising the defense, he conceded the very fact that establishes the violations: He knew Mr. Remley and/or Mr. Koroly intended to resell the firearms. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Respectfully submitted,

JAY R. COMBS
UNITED STATES ATTORNEY

*/s/*_____
DANIEL GAFFNEY
Assistant United States Attorney
EDTX Bar No. 5522212
NY Bar No. 552212
Fl Bar No. 112498
101 East Park Blvd., Suite 500
Plano, Texas 75074
Telephone: (972) 423-2932
Fax: (972) 509-1209
Daniel.Gaffney2@usdoj.gov

*Attorney for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to counsel of record via the court's electronic filing system.

*/s/*_____
DANIEL GAFFNEY
Assistant United States Attorney